572 A.2d 645

DORIS DUNSTON, PETITIONER–APPELLANT, v. DEPARTMENT OF LAW & PUBLIC SAFETY, DIVISION OF GAMING ENFORCEMENT, RESPONDENT–RESPONDENT, AND CASINO CONTROL COMMISSION, AGENCY–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted March 13, 1990—Decided April 10, 1990.

54

Before Judges PRESSLER, LONG and GRUCCIO.

*Morton Feldman*, attorney for appellant.

*Robert J. Del Tufo*, Attorney General of New Jersey, attorney for respondent Division of Gaming Enforcement (*Anthony J. Parrillo*, Assistant Attorney General, of counsel; *Gary A. Ehrlich*, Deputy Attorney General, on the brief).

*Robert J. Genatt*, General Counsel, attorney for respondent Casino Control Commission (*Dennis Daly*, Senior Assistant Counsel, on the statement in lieu of brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Petitioner Doris Dunston, employed in the casino industry as a public area worker, that is, a cleaning lady in the gaming rooms, appeals from a decision of the Casino Control Commission denying her application for renewal of her casino employee license pursuant to the Casino Control Act, *N.J.S.A.* 5:12-1, *et seq.* We reverse, having concluded that the Commission acted arbitrarily in determining that petitioner had not demonstrated sufficient rehabilitation to overcome the onus of an otherwise disqualifying incident.

The relevant factual background is recited in the initial decision of the administrative law judge (ALJ), issued in June 1989. Petitioner started working in the casino industry in 1981 as an employee of United Company, an independent contractor retained by Bally's Park Place Hotel and Casino to clean the casino's gaming areas. In 1982 or 1983, she became a direct

employee of Bally's, licensed by the Commission. The incident in question occurred in April 1985. Petitioner, whose job it was to clean the floor in the slot-machine area on the midnight to 8:00 a.m. shift, came upon a Bally's plastic cup containing 63 one-dollar chips. She took it. Eventually a patron complained. When first asked about it, petitioner denied the taking. Later she admitted it, claiming that the cup was unattended and she believed it to have been abandoned. She also claimed that she had been instructed by United Company that the rule of "finders-keepers" applied to minor items and that she believed this to be Bally's rule as well. In any event, the property, which petitioner had asked a friend to place in her locker for her, was returned to the patron, and no criminal charges were ever filed against her. She was, however, asked to resign and did so. Following that resignation she found similar employment at Claridge Hotel and Casino, where she was still employed more than four years later when the final determination here was rendered.

Based on the foregoing facts, the Division of Gaming Enforcement opposed petitioner's licensure claiming that she was disqualified from relicensure pursuant to both *N.J.S.A.* 5:12–86(g) and *N.J.S.A.* 5:12–90(b). *N.J.S.A.* 5:12–86 lists a series of disqualification criteria. Subsection (c)(1) disqualifies a person who has been convicted of the crimes therein set forth, including all first degree crimes and specified second and third degree crimes. Subsection (c)(2) disqualifies a person who has been convicted of any other offense under state or federal law unlisted in (c)(2) "which indicates that licensure of the applicant would be inimical to the policy of this act and to casino operations...." Subsection (g) disqualifies a person from licensure based on the commission of conduct prescribed by (c)(1) and (c)(2) even though that conduct was not prosecuted. *N.J. S.A.* 5:12–90(b), the second provision on which the Division relied, requires every applicant for a casino employee license to meet the qualification criterion of *N.J.S.A.* 5:12–89(b) for key

employees, namely, to demonstrate "by clear and convincing evidence the applicant's good character, honesty and integrity."

To complete the statutory picture, we point out two additional relevant legislative provisions. First, *N.J.S.A.* 5:12–90(h), mirroring the provisions of the Rehabilitated Convicted Offenders Act (RCOA), *N.J.S.A.* 2A:168A–1, *et seq.*, provides that disqualification imposed by *N.J.S.A.* 5:12–86 may be avoided if the applicant "affirmatively demonstrated his rehabilitation." Subsection (h) then lists factors, substantially similar to those listed in the analogous RCOA section, *N.J.S.A.* 2A:168A–2, which are to be taken into account in the rehabilitation determination. Finally, *N.J.S.A.* 5:12–91(e) authorizes the Commission to "waive any disqualification criterion for a casino hotel employee consistent with the public policy of the act and upon a finding that the interests of justice so require."

Applying the relevant statutory provisions to the facts, the ALJ first concluded, with respect to the criminal-conduct disqualification, that petitioner was not disqualified by conduct constituting a theft in violation of *N.J.S.A.* 2C:20–3 but by conduct constituting an unsworn falsification in violation of *N.J.S.A.* 2C:28–3(b). He declined to find that petitioner's conduct had amounted to a theft because he apparently believed that "she had found the cup of tokens unattended in the slot area," and moreover, that

Bally's policy as to such "found money" was unclear at best and the petitioner credibly claims that she was still under the informal "finders-keepers" practice of the United Company.

The ALJ did, however, conclude that petitioner was guilty of a violation of *N.J.S.A.* 2C:28–3(b), a disorderly person's offense, by reason of her initial false statements to the casino security personnel denying that she took the cup. Nevertheless, the ALJ concluded that that conduct should not be disqualifying because she had adequately demonstrated her rehabilitation pursuant to *N.J.S.A.* 5:12–90(h). Thus, he held that

While the conduct in submitting a false statement was serious, it was a momentary lapse of judgment by the Petitioner, who intended to keep what

apparently she had found on the casino floor. Under these circumstances, and given her otherwise unblemished record, she is not disqualified by the operation of *N.J.S.A.* 5:12–86(c)(2).

Despite that favorable determination, the ALJ recommended against licensure on the ground that petitioner, by reason of the episode, had failed to establish her good character, honesty and integrity as required by *N.J.S.A.* 5:12–90(b). As we read his decision, he proceeded on the basis that the rehabilitation provision of § 90(h) did not apply to § 90(b) even where the § 90(b) problem was essentially the same, or at least based on the same factual complex, as the § 86(c)(2) problem.

■ In reviewing the ALJ's decision, the Commission concluded that he had erred in finding that petitioner's conduct had violated *N.J.S.A.* 2C:28–3(b). The Commission pointed out, and we agree, that that offense requires the unsworn false statements to be made to "a public servant performing his function" and that casino security personnel, who are privately employed by the casinos, are not public servants. *See N.J.S.A.* 2C:27–1(g). The Commission also disagreed with the ALJ respecting the disorderly person's offense of theft, *N.J.S.A.* 2C:20–3(a), 2C:20–2(b)(3), noting that petitioner's

efforts to deem the money abandoned are unpersuasive and unavailing. These were not stray coins found while sweeping under a slot machine at the close of the business day. The applicant found a Bally's cup, partially filled with tokens, in the slot section during operating hours that quite plainly had to have been the property of a casino patron. Even if we were to accept her testimony that she came upon them in an area where no patrons were about (which, because of her many contradictory and dissembling statements, we are not inclined to do), such momentary unattendance does not constitute an abandonment within the meaning of the law. *State v. Bailey,* 97 *N.J.Super.* 396 [235 A.2d 214] (App.Div.1967). That this particular cup was not abandoned in that sense was readily established when the victim reported the tokens stolen shortly after Ms. Dunston took possession of the cup.

The Commission then concluded that petitioner had in fact intended to deprive the rightful owner of property.

After concluding that a § 86(c)(2) offense had been committed, the Commission addressed each of the rehabilitation factors enumerated by § 90(h) as follows:

1. *Nature and Duties.* Although the position of public area attendant is not an inherently sensitive position in the context of casino gaming, it does involve contact with casino patrons on the casino floor, and, in instances such as occurred here, with their money.

2. *Seriousness.* A theft on the casino floor by a casino employee is extremely serious. The harm to public confidence is manifest. Casino patrons should not have to "guard" their cash, chips and tokens from predatory casino personnel.

3. *Circumstances.* The misleading if not false statements given Bally's security personnel who were investigating the theft is a circumstance which exacerbates the seriousness of the offense, as do the applicant's duplicitous efforts to conceal her crime by having her friend hide the money.

4. *Date.* The offense occurred on April 13, 1985.

5. *Age.* The applicant was then 41 years of age, thus her actions were not attributable to immaturity.

6. *Repetitiveness.* The conduct appears to be an isolated incident. The Division did not provide evidence of any other illegal conduct committed by the applicant.

7. *Social Conditions.* As the ALJ indicated, the applicant did not indicate any social conditions which contributed to the offense.

8. *Rehabilitation.* The applicant produced evidence of a fine work record in the casino industry subsequent to the incident. She is considered by supervisors and co-workers to be an honest and very dependable employee.

Based on the foregoing, it concluded that:

These factors need not be weighed equally to determine whether rehabilitation has been shown. Despite the age of the offense and the applicant's subsequent satisfactory employment in the industry since the theft, consideration of the seriousness of the offense, the circumstances surrounding it and her misleading and self-serving testimony at the OAL, we conclude that public confidence in the integrity of the regulatory process and of gaming operations would be justifiably undermined. We therefore modify the initial decision to find the applicant disqualified pursuant to section 86(c)(2) and (g) of the Act.

Finally, the Commission concluded that because of her initial false statements made in order "to frustrate the security department's investigation," petitioner had demonstrated "her lack of good character, honesty and integrity." The Commission was, moreover, of the view that the fact that

the applicant manifested a willingness to thwart the investigative function in furtherance of her illegal activity reveals that she is not amenable to the regulatory process.

In considering the Commission's consequent action of denying petitioner the renewal of her casino employee license, we are mindful of the limited nature of our review and the

extent of our obligation to defer to the fact-finding and judgment of the agency. *See, e.g., Rowatti v. Gonchar*, 101 *N.J.* 46, 51–52, 500 *A.*2d 381 (1985); *Gloucester Cty. Welfare Bd. v. N.J. Civ. Serv. Comm'n*, 93 *N.J.* 384, 391, 461 *A.*2d 575 (1983); *Andersen v. Exxon Co.*, 89 *N.J.* 483, 501, 446 *A.*2d 486 (1982). Nevertheless, we are at liberty to conclude that an agency determination is arbitrary and to reverse it for that reason. We are satisfied that the determination here must be reversed as arbitrary, not because petitioner's conduct was not in itself disqualifying within the statutory intendment and not because by reason thereof, her good character, honesty and integrity were not brought into question, but because on this record she was, on balance, clearly entitled to the benefit of the rehabilitation mechanism of § 90(h).

We find the circumstances here remarkably similar to those in *Maietta v. N.J. Racing Comm'n*, 183 *N.J.Super.* 397, 444 *A.*2d 55 (App.Div.1982), aff'd 93 *N.J.* 1, 459 *A.*2d 295 (1983), where we held, and the Supreme Court agreed, that the Racing Commission had acted arbitrarily in not granting a groom's license to an applicant who claimed the benefit of RCOA following narcotics convictions. We reached that conclusion on the totality of the facts, recognizing the Racing Commission's proper concern for any undue "risk to the integrity of the racing industry and to public confidence therein...." 183 *N.J.Super.* at 401, 444 *A.*2d 55.

 We are, of course, well aware of the particular vulnerability of the casino industry to improper influence and infiltration by criminal and corrupt elements and the consequent burden on the Commission to protect the industry's integrity and the public's confidence in it. We are convinced, however, that these concerns would not be at all compromised by petitioner's continued license to clean casino floors. According to this record, she is a woman in her forties with whom ten grandchildren reside, most of whom she supports in whole or in part. It appears that she has little training or education. It

also is evident that the casino industry is the primary Atlantic City employer. During the four years since this episode, she had worked as a cleaner for another casino, which gave her a written testimonial for use in these proceedings, praising her demonstrated honesty and industry. What we have before us, at worst, is a hardworking, economically disadvantaged person of little employment opportunity and having significant family responsibilities, who once, during a seven-year employment period, succumbed to the continuing temptation posed by the glitz, glitter, and the virtual throwing away of money which constitute her work environment and who then, in fear of losing her job, lied about her conduct before admitting her action.[1] Considering the scope, extent and nature of the significant and constant threat to the integrity of the casino industry with which the Commission must vigilantly concern itself, we are convinced that petitioner's license renewal, despite her single, isolated and pardonable fall from grace, would not pose an undue risk to the industry. It is, in our view, a very small drop in a very large bucket which is not enough cause to banish her from her primary employment opportunity. We thus conclude that the Commission mistakenly applied and arbitrarily balanced the relevant rehabilitation factors. If petitioner is not a candidate for the rehabilitation beneficence of the statute, who is?

A further word about rehabilitation. We understand that it operates, by the express terms of the statute, only in respect of the disqualifying conduct specified by § 86 and does not directly affect the requisite good character, honesty and integrity of § 90(b). Nevertheless, where the conduct under § 86 and the contrary demonstration under § 90(b) are all part

---

[1]We note, however, the ALJ's finding, based on his assessment of petitioner's credibility, that the circumstances surrounding her taking of the cup were at least ambiguous vis-a-vis any criminal intent and that, consequently, we are at liberty to accept that finding despite the Commission's contrary one. *See Clowes v. Terminix Intern., Inc.,* 109 *N.J.* 575, 587–588, 538 *A.2d* 794 (1988).

of the same transaction and constitute a single *res gestae*, it would, in our view, contravene the statutory intendment to insist that while the § 86 conduct can be overcome by rehabilitation, the circumstances surrounding that conduct cannot be. In that case, no one would ever be eligible for rehabilitation relief. The proof of petitioner's good character, honesty and integrity thus lies in her entire unblemished work history apart from this one episode and its surrounding circumstances. The purpose, policy and substantive provision of the rehabilitation remedy compels the renewal of the license here sought.

The determination of the Casino Control Commission is reversed, and we remand for entry of an order approving the license renewal.