273 N.J. Super. 239 (1994)
641 A.2d 1060
STATE OF NEW JERSEY, DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF GAMING ENFORCEMENT, APPELLANT,
v.
ADRIEL GONZALEZ, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 1, 1994.
Decided May 10, 1994.
*240 Before Judges MICHELS, SKILLMAN and WEFING.
Gary A. Ehrlich, Deputy Attorney General, argued the cause for appellant Division of Gaming Enforcement (Deborah T. Poritz, *241 Attorney General, attorney; Alvin G. Shpeen, Assistant Attorney General, of counsel; Mr. Ehrlich, on the brief).
Steven M. Ingis, Assistant General Counsel, argued the cause for respondent New Jersey Casino Control Commission (John R. Zimmerman, General Counsel; Ruth S. Morgenroth, Counsel, and Mr. Ingis, on the brief).
The opinion of the court was delivered by WEFING, J.S.C. (temporarily assigned).
Adriel Gonzalez[1] held a casino employee license under § 7 of the Casino Control Act, N.J.S.A. 5:12-1 et seq. That license permitted Gonzalez to be employed by the Sands Hotel and Casino as a security officer.
In 1990, Gonzalez was indicted for possession of a controlled dangerous substance with intent to distribute (N.J.S.A. 2C:35-5b(12)); distribution of a controlled dangerous substance (N.J.S.A. 2C:35-5b(12)); distributing drugs within 1,000 feet of school property (N.J.S.A. 2C:35-7); and conspiracy to commit distribution of a controlled dangerous substance (N.J.S.A. 2C:5-2; N.J.S.A. 2C:35-5b(3)). Approximately two and one-half months after his indictment, Gonzalez, represented by counsel, entered a plea of guilty to two counts of the indictment, distributing drugs within 1,000 feet of school property and conspiracy.
Entry of that guilty plea triggered proceedings before the Casino Control Commission (Commission) when the Division of Gaming Enforcement (Division) filed a complaint with the Commission seeking revocation of Gonzalez's casino employee license. A hearing was held before one of the commissioners, sitting as a hearing examiner, during which Gonzalez testified, in response to the hearing examiner's questions, that despite his entry of a plea of guilty on two of the counts of the indictment, he in fact did not commit the offenses charged. At a subsequent hearing Gonzalez *242 was again allowed to testify, over the Division's strenuous objections, that he was not guilty of these offenses. The examiner ultimately concluded that Gonzalez's denial was more credible than the testimony of the arresting officer whom the Division felt compelled to bring in to meet Gonzalez's testimony. The examiner accepted the testimony of Gonzalez that he entered a false plea of guilty "because he could not afford to have a private attorney represent him in court and because he wanted to get the matter over with as quickly as possible." She concluded that Gonzalez had been rehabilitated pursuant to N.J.S.A. 5:12-90(h), and possessed the "good character, honesty and integrity" required under N.J.S.A. 5:12-89(b)(2) and -90(b) to retain his casino employee license. The Commission, Chairman Perskie dissenting, adopted her determination and this appeal resulted.
The Division argues on appeal that the Commission erred in permitting Gonzalez to re-litigate before it the basis of his convictions for distribution of a controlled dangerous substance and conspiracy. We agree with the Division's position for we are satisfied that one who has been convicted of a crime, whether by way of trial or a plea of guilty, should not be permitted to re-litigate, in another forum, the fact of his guilt.
The doctrine of issue preclusion prohibits, as a general rule, the re-litigation of any factual or legal issue that was actually determined in an earlier proceeding. State v. Gonzalez, 75 N.J. 181, 380 A.2d 1128 (1977); Morton Int'l, Inc. v. Gen. Accident Ins. Co. of America, 266 N.J. Super. 300, 629 A.2d 895 (App.Div. 1991), aff'd, 134 N.J. 1, 629 A.2d 831 (1993). To invoke the doctrine of issue preclusion, the issues presented within the two proceedings must be identical, Ettin v. Ava Truck Leasing, Inc., 53 N.J. 463, 251 A.2d 278 (1969), and the earlier proceedings must have afforded "a full and fair opportunity" to the party against whom the doctrine of issue preclusion is invoked to litigate the contested issue. Prudential Property and Casualty Ins. Co. v. Kollar, 243 N.J. Super. 150, 578 A.2d 1238 (App.Div. 1990).
*243 We are satisfied that, within the particular context of these proceedings, both elements have been met. Gonzalez sought to place the same issue  whether he distributed a controlled dangerous substance within 1,000 feet of school property, and conspired to distribute a controlled dangerous substance  in question in two different fora, the Superior Court of New Jersey when he pled guilty to those charges and the Casino Control Commission when he denied his guilt.
Commentators have differed on the consequences the entry of a plea of guilty should have upon later civil actions. See, e.g., David L. Shapiro, Should a Guilty Plea Have Preclusive Effect?, 70 Iowa L.Rev. 27 (1984); Geoffrey C. Hazard, Revisiting the Second Restatement of Judgments: Issue Preclusion and Related Problems, 66 Cornell L.Rev. 564 (1981); Allan D. Vestal, The Restatement (Second) of Judgments: A Modest Dissent, 66 Cornell L.Rev. 464 (1981). Much of the unwillingness to accord a preclusive effect to a guilty plea in subsequent civil litigation stems from two bases, the first of which is concern for the consequences of such an approach upon a third party who is seeking compensation, in a civil context, for injuries received as a result of the conduct which supported the guilty plea. This concern is reflected in cases such as Prudential Property and Casualty Ins. Co. v. Kollar, supra (plea of guilty to aggravated arson not conclusive on insurer's attempt to disclaim coverage in subsequent subrogation action brought on behalf of victim), and Garden State Fire & Casualty Co. v. Keefe, 172 N.J. Super. 53, 410 A.2d 718 (App.Div.), certif. denied, 84 N.J. 389, 420 A.2d 317 (1980) (plea of guilty to atrocious assault and battery not conclusive on insurer's attempt to disclaim coverage in subsequent negligence actions brought by victim of shooting).
Indeed concern for the victim seeking damages for injuries has even led to a determination that a conviction for atrocious assault and battery following a jury trial is not dispositive of a carrier's obligations to defend and indemnify its insured in a subsequent suit brought by the insured's victim. Burd v. Sussex Mut. Ins. *244 Co., 56 N.J. 383, 267 A.2d 7 (1970). That an injured party not be left remediless has led another court to conclude that a juvenile, who pled guilty before the then Juvenile and Domestic Relations Court to theft of an automobile, was not barred by N.J.S.A. 39:6A-7(a) from recovering personal injury protection (PIP) benefits for injuries he received when he lost control of the stolen car he was driving and cracked into a tree. Kaplowitz v. State Farm Mut. Auto. Ins. Co., 201 N.J. Super. 593, 493 A.2d 637 (Law Div. 1985).
This court, however, is not confronted in this case with the public policy considerations attendant to an innocent victim's attempt to recover damages or an insured's attempt to receive maximum protection under previously purchased insurance policies. Garden State Fire & Casualty Co. v. Keefe, supra, 172 N.J. Super. at 57, 410 A.2d 718. Further, unlike the present case, those cases within New Jersey which have permitted subsequent civil litigation of the issues underlying a previously entered guilty plea have involved an attempt to litigate in the civil forum the intent of the party committing certain acts, rather than whether the acts were committed at all. See, e.g., Allstate Ins. Co. v. Schmitt, 238 N.J. Super. 619, 633, 570 A.2d 488 (App.Div.), certif. denied, 122 N.J. 395, 585 A.2d 394 (1990).
The second basis often advanced to justify permitting re-litigation in a civil forum of facts previously established by a guilty plea is a concern about the sufficiency and fairness of the plea process itself. As to this rationale, the record on review provides absolutely no basis for this court to infer that Mr. Gonzalez's entry of a plea of guilty did not comply in all respects with the requirements of R. 3:9-2. Nor is there any indication that Mr. Gonzalez has at any time sought to return to the trial court to attempt to withdraw his guilty plea. We consider it inappropriate to conclude, without more, that a conviction which follows from a guilty plea automatically stands on a lesser footing, and should have different consequences, than a conviction which follows a trial. To so hold would, *245 in our view, denigrate the conscientious efforts of all those involved in the administration of our criminal justice system.
We recognize that our Supreme Court has stated:
A guilty plea is merely evidence, not conclusive proof, of the facts underlying the offense. Wigmore, supra, § 1066 at 86. Because such a plea is entered without litigation of the underlying facts, it does not estop the pleading party from contesting the admitted fact. Teitelbaum Furs v. Dominion Ins. Co., 58 Cal.2d 601, 603, 375 P.2d 439, 441, 25 Cal. Rptr. 559, 561 (1962); cf. Mazzilli v. Accident & Casualty Ins. Co., 26 N.J. 307, 314, 139 A.2d 741 (1958) (collateral estoppel applies "as to those questions, issues or facts which were actually litigated and determined in the prior action."). The plea is merely an admission of a party. As with other admissions, the party who has entered the plea may rebut or otherwise explain the circumstances surrounding the admission. Stoelting v. Hauck, supra, 32 N.J. [87] at 107, 159 A.2d 385 [(1960)]; Brohawn v. Transamerica Ins. Co., 276 Md. 396, 403, 347 A.2d 842, 848 (1975). Thus, a party who has pled guilty may try to persuade the jury that the plea was merely a compromise, or less a reflection of guilt than a balancing of the costs of contesting the charge with the burden of the conviction. That explanation, however, does not affect the admissibility of the plea. Stoelting, supra, 32 N.J. at 108, 159 A.2d 385.
[Eaton v. Eaton, 119 N.J. 628, 644-45, 575 A.2d 858 (1990).]
That case, however, is wholly distinguishable. In Eaton, a wrongful death action was brought by Gerald Eaton, husband of the deceased, against his defendant daughter Donna, following his wife's death in a single vehicle accident. Immediately after the accident, Mrs. Eaton and Donna each identified the other as the driver of the vehicle. Some six weeks after the accident, without entering a court appearance and contrary to the provisions of R. 7:7-3, Donna pled guilty to careless driving and paid a $60 fine to the appropriate municipal violations bureau. In the later civil action, Donna returned to her original position that, despite the physical evidence to the contrary, her mother was driving when the car went off the road. It is within that context that the Court's conclusion that a guilty plea is merely the equivalent of an admission of a party must be understood. Paying a traffic summons by mail for a motor vehicle offense is not, in our view, the procedural and substantive equivalent to pleading guilty, under R. 3:9-2, to distribution of a controlled dangerous substance within 1,000 feet of school property.
*246 Further, the out-of-state authorities cited by the Eaton Court are also distinguishable. Teitelbaum Furs, Inc. v. Dominion Ins. Co., 58 Cal.2d 601, 25 Cal. Rptr. 559, 375 P.2d 439 (1962), cert. denied, 372 U.S. 966, 83 S.Ct. 1091, 10 L.Ed.2d 130 (1963), did not deal with a conviction following a guilty plea therefore rendering the court's discussion of a guilty plea dicta. Brohawn v. Transamerica Ins. Co., 276 Md. 396, 347 A.2d 842 (1975), involved a declaratory judgment action following a carrier's refusal to defend its insured in a civil action after the insured pled guilty to assault. It thus reflects the same concerns expressed in Prudential Property and Casualty Ins. Co. v. Kollar, supra, and Garden State Fire & Casualty Co. v. Keefe, supra.
Finally, both California and Maryland permit a defendant to plead guilty and yet assert innocence. People v. Watts, 67 Cal. App.3d 173, 136 Cal. Rptr. 496 (Ct.App. 1977); Ward v. State of Maryland, 83 Md. App. 474, 575 A.2d 771 (Md. Ct. Spec. App. 1990). New Jersey, however, does not permit the entry of such a plea, commonly referred to as an Alford plea.[2]State v. Smullen, 118 N.J. 408, 571 A.2d 1305 (1990); State v. Spano, 69 N.J. 231, 353 A.2d 97 (1976); State v. Reali, 26 N.J. 222 (1958).
We note further the particular factual context in which the issue has been presented to us. Gonzalez held a license which permitted him to work in the casino industry, a business which is, of necessity, highly regulated to preserve public confidence in its integrity. State of New Jersey, Dep't of Law and Public Safety v. Hannah, 221 N.J. Super. 98, 534 A.2d 18 (App.Div. 1987). To permit Gonzalez to assert such diametrically opposite positions, and to have the Commission reach conclusions at variance with the judicial record, hardly fosters public confidence in either the casino industry or the judicial system.
The doctrine of issue preclusion is an equitable doctrine and will only be applied when it is fair to do so. Morton Int'l, Inc. *247 v. Gen. Accident Ins. Co. of America, supra, 266 N.J. Super. at 321, 629 A.2d 895. We perceive nothing unfair in refusing to let Gonzalez seek to retain a state license by denying his prior representations to the Superior Court.
We agree with the Division that the issue of whether Gonzalez should be permitted to retain his casino employee license is analogous to attorney disciplinary proceedings in which the Court has not permitted re-examination of underlying facts established through guilty pleas. Matter of Stier, 108 N.J. 455, 530 A.2d 786 (1987); In re Mirabelli, 79 N.J. 597, 401 A.2d 1090 (1979).
The limited scope of our determination should be noted. We conclude only that one who has pled guilty to the commission of a criminal offense may not, thereafter, seek in a different forum to deny commission of the very acts previously admitted. We acknowledge that there may well be attendant circumstances which would serve to mitigate, in that different forum, the consequences which might otherwise flow from the commission of those acts. Indeed, the Division noted at oral argument that it did not oppose Mr. Gonzalez's attempt to introduce evidence of mitigating circumstances.
Our dissenting colleague cites Bressman v. Gash, 131 N.J. 517, 621 A.2d 476 (1993), for the proposition that an administrative agency has some discretion in determining whether to give preclusive effect to a prior judicial determination. In that case, defendant Gash filed an application with the Edison Board of Adjustment seeking a twenty-eight foot variance from the sixty-foot rear yard setback requirements of the Edison zoning ordinance. His initial variance request was granted, and the appropriateness of this determination was affirmed by the Law Division upon an appeal taken by objecting neighbors. Those neighbors took a further appeal to this court, during the pendency of which Gash constructed his house. This court reversed the grant of the variance in the same month in which construction was completed.
*248 Gash then filed a second application for a variance and a minor subdivision approval as he had arranged to exchange two small parcels of his lot for parcels belonging to other non-objecting neighbors. Under this second application, Gash sought a thirty-two foot variance and proposed the addition of a landscape buffer to his rear line. Because a minor subdivision was involved, Gash's application was forwarded to the Planning Board, which approved it. On appeal, the Law Division reversed, concluding that the Planning Board had acted arbitrarily, capriciously and unreasonably in deciding that Gash's second application was sufficiently different from his first to avoid the invocation of res judicata. On appeal, this court affirmed.
The Supreme Court granted Gash's petition for certification and concluded that the Planning Board did not abuse its discretion when it decided to consider Gash's application. Bressman v. Gash, 131 N.J. at 527, 621 A.2d 476. That determination does not, in our view, justify an administrative agency, such as the Commission, permitting an individual who has represented to a judge of the Superior Court of this State that he committed certain criminal actions and who has derived a significant benefit as a result of the plea bargain, to thereafter deny that he did commit these.[3]
Our dissenting colleague concludes that the Commission did not abuse its discretion in declining to estop Gonzalez from contesting his guilt before it, and notes that under In re Cassidy, 892 F.2d 637, 642 (7th Cir.), cert. denied, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990), it is within a court's discretion whether to invoke estoppel. As the court of appeals in Cassidy noted, estoppel should not be used "where it would work an injustice, such as where the former position was the product of inadvertence or mistake ... or where there is only an appearance of inconsistency *249 between the two positions but both may be reconciled." Ibid. There is no indication here that Gonzalez's plea of guilty was entered inadvertently or through mistake; nor may his positions before the court when entering his plea of guilty be reconciled with his position before the hearing examiner.
Our colleague concludes that it was within the Commission's discretion whether to invoke estoppel "to protect the integrity of its administrative process." We do not agree that the Commission possessed such discretion for, within our view, its actions undermined the integrity of the judicial process.
We share the view of the then-chairman of the Commission who dissented and stated:
Permitting a party to relitigate his guilt can only undermine the integrity of the judicial system and the regulatory process. We would be hard-pressed to explain rationally why a crime found in a judicial forum to have been committed is found in another not to have occurred, particularly when the standard of proof in our proceeding is less than in the former. Therefore, I am persuaded that we should not relitigate in our regulatory proceedings the issue of one's guilt once it has been determined by a court of competent jurisdiction. This policy embraces the fundamental precept of comity, that administrative agencies must have underlying confidence in the correctness of judicial determinations.
We thus reverse the action of the Commission and remand this matter for further proceedings upon the issue of whether Gonzalez has been "rehabilitated" pursuant to N.J.S.A. 5:12-90(h) and possesses the "good character, honesty and integrity" required under N.J.S.A. 5:12-89(b)(2), apart from a consideration of whether he conspired to and did distribute a controlled dangerous substance within 1,000 feet of school property.
Reversed and remanded.
SKILLMAN, J.A.D., dissenting.
I conclude that the Casino Control Commission did not abuse its discretion in considering Gonzalez' evidence regarding the circumstances of the offense to which he pled guilty, even though that evidence was exculpatory. Therefore, I dissent.
*250 The Casino Control Act (the Act), N.J.S.A. 5:12-1 to 210, confers broad power upon the Commission to regulate the casino industry. Bally Mfg. Corp. v. New Jersey Casino Control Comm'n, 85 N.J. 325, 328, 426 A.2d 1000, appeal dismissed, 454 U.S. 804, 102 S.Ct. 77, 70 L.Ed.2d 74 (1981); In re Rules Regarding Property Disposition of a Casino Licensee, 224 N.J. Super. 316, 319-21, 540 A.2d 523 (App.Div. 1988). These regulatory powers include the licensing of all casino employees. N.J.S.A. 5:12-63(a); N.J.S.A. 5:12-85 to -91. In discharging this licensing responsibility, the Commission is required to determine whether an applicant is disqualified under any of the criteria set forth in N.J.S.A. 5:12-86, which include a conviction of any of the criminal offenses enumerated thereunder. See N.J.S.A. 5:12-86(c).
However, an applicant for a casino employee license who is disqualified based upon a conviction for an enumerated offense may still obtain a license by showing "rehabilitation." N.J.S.A. 5:12-90(h);[1] see Dunston v. Department of Law & Pub. Safety, 240 N.J. Super. 53, 572 A.2d 645 (App.Div. 1990). The Commission is required to consider the following factors in determining whether an applicant has demonstrated "rehabilitation" within the intent of N.J.S.A. 5:12-90(h):
(1) The nature and duties of the position applied for;
(2) The nature and seriousness of the offense or conduct;
(3) The circumstances under which the offense or conduct occurred;
(4) The date of the offense or conduct;
(5) The age of the applicant when the offense or conduct was committed;
(6) Whether the offense or conduct was an isolated or repeated incident;
(7) Any social conditions which may have contributed to the offense or conduct;
(8) Any evidence of rehabilitation, including good conduct in prison or in the community, counseling or psychiatric treatment received, acquisition of additional *251 academic or vocational schooling, successful participation in correctional work-release programs, or the recommendation of persons who have or have had the applicant under their supervision.
Thus, of the eight factors which the Commission must consider in determining whether an applicant convicted of a disqualifying offense has been rehabilitated, five involve the nature and circumstances of the offense and the applicant's role therein (subsections (2), (3), (5), (6) and (7)), as distinguished from the applicant's conduct and activities subsequent to the offense. Consequently, if a conviction results from a guilty plea, and as a result there is no opportunity for the development of a complete record, the Commission must allow the applicant and the Division of Gaming Enforcement (the Division) to present evidence regarding the nature and circumstances of the offense.
The Division concedes that an applicant for a casino employee license who has pled guilty to one of the disqualifying offenses may present evidence mitigating his culpability in order to demonstrate rehabilitation within the intent of N.J.S.A. 5:12-90(h).[2] The Division also acknowledges that the Commission must evaluate the credibility of any such mitigating evidence which an applicant may present. However, the Division contends that if an applicant presents evidence which would negate any of the elements of the offense to which he has pled guilty,[3] the Commission is precluded under the doctrines of collateral estoppel and judicial estoppel from evaluating the credibility of that testimony.
"Collateral estoppel is that branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, *252 involving a different claim or cause of action." State v. Gonzalez, 75 N.J. 181, 186, 380 A.2d 1128 (1977). For the doctrine to apply, "the factual issue must actually have been litigated and determined." Allesandra v. Gross, 187 N.J. Super. 96, 105, 453 A.2d 904 (App.Div. 1982). "The doctrine of judicial estoppel provides `that a party who, with knowledge of the facts, has assumed a particular position in judicial proceedings, and has succeeded in maintaining that position, is estopped to assume a position inconsistent therewith to the prejudice of the adverse party.'" Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 620, 581 A.2d 91 (App.Div. 1990) (emphasis omitted) (quoting Brown v. Allied Plumbing & Heating Co., 129 N.J.L. 442, 446, 30 A.2d 290 (Sup.Ct.), aff'd, 130 N.J.L. 487, 33 A.2d 813 (E. & A. 1943)), aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991). Our courts have recognized that collateral estoppel and related issue preclusion doctrines may be applied in administrative proceedings. City of Hackensack v. Winner, 82 N.J. 1, 31-33, 410 A.2d 1146 (1980); Hinfey v. Matawan Regional Bd. of Educ., 77 N.J. 514, 532, 391 A.2d 899 (1978); Lubliner v. Board of Alcoholic Beverage Control, 33 N.J. 428, 441-42, 165 A.2d 163 (1960). However, in the absence of a controlling legislative directive, an agency has some discretion in determining whether to give preclusive effect to a prior judicial or administrative determination. See Bressman v. Gash, 131 N.J. 517, 527-28, 621 A.2d 476 (1993).
The Act does not preclude an applicant seeking to demonstrate rehabilitation within the intent of N.J.S.A. 5:12-90(h) from presenting evidence which negates one of the elements of the disqualifying offense to which he has pled guilty. Instead, N.J.S.A. 5:12-90(h) directs the Commission to consider various factors in determining whether rehabilitation has been demonstrated, including "[t]he circumstances under which the offense or conduct occurred," N.J.S.A. 5:12-90(h)(3), without imposing any restriction upon either the type of evidence which the Commission may receive or the permissible scope of the Commission's evaluation of that evidence. Moreover, another section of the Act explicitly requires a judgment of conviction to be given preclusive effect *253 regarding the essential facts underlying the conviction. N.J.S.A. 5:12-127(d) provides that in a civil forfeiture proceeding brought under the Act:
A final judgment or decree rendered in favor of the State in any criminal proceeding brought under this act shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the Attorney General.
See also N.J.S.A. 2C:51-2b(1); R. 1:20-6(c)(1). N.J.S.A. 5:12-90 contains no similar provision, which suggests that the Legislature did not intend to alter the common law doctrines of issue preclusion in connection with the Commission's determination of rehabilitation under this section. See Asbury Park Press v. City of Asbury Park, 19 N.J. 183, 195, 115 A.2d 564 (1955); 2B Sutherland Statutory Construction § 51.02 at 122-23 (Norman J. Singer, ed., 5th ed. 1992). Consequently, in the absence of a controlling statutory directive, the question presented by this appeal is whether collateral estoppel or any other established doctrine of issue preclusion forecloses the Commission from allowing an applicant for a casino employee license to present evidence which may negate an element of a disqualifying offense to which he has pled guilty.
Our courts have recognized that a guilty plea ordinarily does not collaterally estop the party entering the plea from contesting the facts underlying the plea:
Because ... a [guilty] plea is entered without litigation of the underlying facts, it does not estop the pleading party from contesting the admitted fact. The plea is merely an admission of a party. As with other admissions, the party who has entered the plea may rebut or otherwise explain the circumstances surrounding the admission. Thus, a party who has pled guilty may try to persuade the jury that the plea was merely a compromise, or less a reflection of guilt than a balancing of the costs of contesting the charge with the burden of the conviction.
[Eaton v. Eaton, 119 N.J. 628, 644, 575 A.2d 858 (1990) (citations omitted).]
Accord Prudential Property & Casualty Ins. Co. v. Kollar, 243 N.J. Super. 150, 155, 578 A.2d 1238 (App.Div. 1990) ("A plea proceeding is not ... a full and fair litigation of the issues."); Garden State Fire & Casualty Co. v. Keefe, 172 N.J. Super. 53, 60-61, 410 A.2d 718 (App.Div.) ("[A] plea-entry proceeding ... represents a defendant's option to forego [a full and fair litigation of the issues] *254 and usually for reasons having little or nothing to do with the nature of the issues themselves."), certif. denied, 84 N.J. 389, 420 A.2d 317 (1980); cf. State v. Davis, 116 N.J. 341, 385 n. 2, 561 A.2d 1082 (1989) (Handler, J., dissenting in part and concurring in part) ("Frequently, when the guilty plea is the result of a plea bargain, the true nature of the evidence does not support the offense to which the defendant pled.").
The majority undertakes to distinguish this line of New Jersey cases on the ground that they generally have involved claims against insurance companies by injured parties who would have been deprived of a recovery by the "defensive" application of the collateral estoppel doctrine. (Ante at 242-45, 641 A.2d at 1061-62). However, Eaton actually involved the converse situation  a plaintiff in a wrongful death automobile negligence action who introduced the defendant's guilty plea to show that the defendant was the driver of the car in the accident  and the Court nevertheless said that the plea was "merely evidence, not conclusive proof, of the facts underlying the offense." 119 N.J. at 644, 575 A.2d 858. In any event, the pertinent New Jersey cases uniformly indicate that the applicability of the doctrine of collateral estoppel turns solely on whether an issue was "actually litigated" in the first proceeding, rather than on the consequences of issue preclusion in a subsequent proceeding. See, e.g., ibid. ("Because such a plea is entered without litigation of the underlying facts, it does not estop the pleading party from contesting the admitted fact."); State v. Gonzalez, supra, 75 N.J. at 186, 380 A.2d 1128 ("Collateral estoppel ... bars relitigation of any issue which was actually determined in a prior action...."); Mazzilli v. Accident & Casualty Ins. Co., 26 N.J. 307, 314, 139 A.2d 741 (1958) (Collateral estoppel applies to "those questions, issues or facts which were actually litigated and determined in the prior action."); Allesandra v. Gross, supra, 187 N.J. Super. at 105, 453 A.2d 904 (For collateral estoppel to apply "the factual issue must actually have been litigated and determined."). Therefore, the majority's view of the prerequisites for applicability of the doctrine of collateral *255 estoppel is inconsistent with well-established New Jersey law, recently reaffirmed in Eaton.
The requirement expressed in Eaton that guilt must be determined by a trial rather than a plea in order to preclude a defendant from contesting the facts underlying the conviction corresponds with the position taken by the American Law Institute in the second Restatement of Judgments. The second Restatement does not preclude relitigation simply because a party has had an opportunity to litigate a contested issue, but instead requires the issue to have been "actually litigated." Restatement (Second) of Judgments § 27 (1982); see Bower v. O'Hara, 759 F.2d 1117, 1124-27 (3d Cir.1985); see generally, Geoffrey C. Hazard, Jr., Revisiting the Second Restatement of Judgments: Issue Preclusion and Related Problems, 66 Cornell L.Rev. 564, 574-86 (1981); David L. Shapiro, Should a Guilty Plea Have Preclusive Effect?, 70 Iowa L.Rev. 27 (1984); Allan D. Vestal, The Restatement (Second) of Judgments: A Modest Dissent, 66 Cornell L.Rev. 464, 466-97 (1981). Consequently, under the Restatement's approach a judgment of conviction collaterally estops a defendant from contesting an issue of fact only if "the issue in question was actually litigated in the criminal prosecution." Restatement (Second) of Judgments § 85 cmt. b (1982). Collateral estoppel "does not apply where the criminal judgment was based on ... a plea of guilty." Ibid.[4]
Although some courts have declined to follow the Restatement and have instead held that a person may be collaterally estopped from disputing the facts underlying a guilty plea, see, e.g., Blohm v. Commissioner, 994 F.2d 1542, 1553-54 (11th Cir.1993); Appley v. West, 832 F.2d 1021, 1025-26 (7th Cir.1987); Fontneau v. *256 United States, 654 F.2d 8, 10 (1st Cir.1981); Ideal Mut. Ins. Co. v. Winker, 319 N.W.2d 289, 291-96 (Iowa 1982), our Supreme Court in Eaton clearly adopted the Restatement's position, as have a significant number of other courts which have considered the issue. See, e.g., Haring v. Prosise, 462 U.S. 306, 314-16, 103 S.Ct. 2368, 2373-75, 76 L.Ed.2d 595, 604-05 (1983) (applying Virginia law); United States v. One Parcel of Real Property, 900 F.2d 470, 473 (1st Cir.1990); Bower v. O'Hara, supra, 759 F.2d at 1124-26; Aetna Casualty & Surety Co. v. Niziolek, 395 Mass. 737, 481 N.E.2d 1356, 1362-64 (1985); Safeco Ins. Co. v. McGrath, 42 Wash. App. 58, 708 P.2d 657, 660-61 (Ct.App. 1985). Therefore, I find no support in either New Jersey law or the prevailing law in other jurisdictions, as reflected in the second Restatement of Judgments, for the conclusion that a party may be precluded under the doctrine of collateral estoppel from contesting a fact in subsequent civil proceedings which has been directly or impliedly admitted by a guilty plea.
I turn next to the Division's alternative contention that the doctrine of judicial estoppel forecloses the Commission from crediting an applicant's exculpatory version of a disqualifying offense to which he has pled guilty. As previously indicated, our courts have stated that the doctrine of judicial estoppel may be invoked to preclude "a party who, with knowledge of the facts, has assumed a particular position in judicial proceedings, and has succeeded in maintaining that position, ... [from] assum[ing] a position inconsistent therewith to the prejudice of the adverse party."[5]Chattin v. Cape May Greene, Inc., supra, 243 N.J. Super. *257 at 620, 581 A.2d 91 (emphasis omitted) (quoting Brown v. Allied Plumbing & Heating Co., supra, 129 N.J.L. at 446, 30 A.2d 290); but cf. Levin v. Robinson, Wayne & La Sala, 246 N.J. Super. 167, 188, 586 A.2d 1348 (Law Div. 1990) (disputing the requirement that a party's prior position be "successfully maintained"). Most other jurisdictions describe this doctrine in similar terms. See, e.g., In re Cassidy, 892 F.2d 637, 641 (7th Cir.) ("[T]o be estopped [a party must] have convinced the court to accept its position in the earlier litigation. A party is not bound to a position it unsuccessfully maintained."), cert. denied, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990); Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir.1982) ("The doctrine of judicial estoppel applies to a party who has successfully and unequivocally asserted a position in a prior proceeding...."); see also United States ex rel. Am. Bank v. C.I.T. Constr. Inc. of Tex., 944 F.2d 253, 258-59 (5th Cir.1991); Astor Chauffeured Limousine v. Runnfeldt Inv. Corp., 910 F.2d 1540, 1547-48 (7th Cir.1990); see generally, Boyers, supra, 80 Nw.U.L.Rev. at 1255-58; Douglas W. Henkin, Judicial Estoppel-Beating Shields Into Swords And Back Again, 13 U.Pa.L.Rev. 1711, 1719-25 (1991).
The purpose of the doctrine of judicial estoppel is "to protect the integrity of the judicial process." Edwards v. Aetna Life Ins. Co., supra, 690 F.2d at 598; accord Delgrosso v. Spang & Co., 903 *258 F.2d 234, 241 (3d Cir.), cert. denied, 498 U.S. 967, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990); In re Cassidy, supra, 892 F.2d at 641. Such injury to the integrity of the judicial system occurs when a later court accepts a position contrary to that which a party has successfully asserted in an earlier proceeding. United States v. McCaskey, 9 F.3d 368, 379 (5th Cir.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994); In re Cassidy, supra, 892 F.2d at 641; Edwards v. Aetna Life Ins. Co., supra, 690 F.2d at 599. Whether the integrity of the courts may be compromised by a party taking inconsistent positions, and thus whether a court should invoke the doctrine of judicial estoppel, is a determination committed to the court's sound discretion. In re Cassidy, supra, 892 F.2d at 642.
One commentator has described the differences between the doctrines of collateral estoppel and judicial estoppel as follows:
Collateral estoppel bars a party from relitigating an issue of ultimate fact that a court already has adjudicated. It deals with the finality of judgment on factual matters that were fully considered and decided. Judicial estoppel, on the other hand, prevents inconsistent positions whether or not they have been the subject of a final judgment.... Judicial estoppel is designed to maintain the purity and integrity of the judicial process by preventing inconsistent positions from being asserted. Thus, the essential distinction is that collateral estoppel prevents the assertion of the same position in order to conserve judicial resources, while judicial estoppel prevents the assertion of a contradictory position in order to protect the judicial process as a whole.
[Boyers, supra, 80 Nw.U.L.Rev. at 1247-48.]
See also Edwards v. Aetna Life Ins. Co., supra, 690 F.2d at 598-99.
In my view, the question whether a party who has entered a guilty plea should be precluded in a subsequent proceeding from contesting a fact which has been directly or impliedly admitted by the plea is more appropriately analyzed under the doctrine of judicial estoppel rather than collateral estoppel. Although a party's attempt to disavow a fact admitted by a guilty plea in a subsequent civil proceeding could not result in the relitigation of an issue which was "actually litigated" in the prior action, it has the potential to undermine the integrity of the hearing tribunal, which is what the doctrine of judicial estoppel seeks to prevent. *259 Moreover, it can be argued that when a court accepts a defendant's guilty plea, the defendant has "succeeded" in maintaining his position before that court and hence should be estopped from taking a contrary position before another tribunal. See Edwards v. Aetna Life Ins. Co., supra, 690 F.2d at 599 n. 5 (The requirement of "judicial acceptance [of a party's position] means only that the first court has adopted the position urged by the party.").
The application of the judicial estoppel doctrine to preclude a party who has pled guilty from disputing the facts underlying the plea in subsequent civil proceedings is supported by a leading scholarly commentator, Hazard, supra, 66 Cornell L.Rev. at 577-78, and by a member of the Third Circuit Court of Appeals. Bower v. O'Hara, supra, 759 F.2d at 1127-1131. (Slovitor, J., concurring in part and dissenting in part). However, another distinguished commentator has taken the position that, in the absence of a contrary legislative directive, no preclusive effect should be given to a guilty plea, Shapiro, supra, 70 Iowa L.Rev. at 46-51, and I have been unable to locate a single reported decision which has actually applied the doctrine of judicial estoppel to a guilty plea. Moreover, the rationale expressed by this court in Garden State Fire & Casualty Co. v. Keefe, supra, and by the Supreme Court in Eaton v. Eaton, supra, for not applying the doctrine of collateral estoppel to guilty pleas  namely, that a party who has pled guilty should be afforded the opportunity to prove to a subsequent tribunal "that the plea was merely a compromise, or less a reflection of guilt than a balancing of the costs of contesting the charge with the burden of the conviction," 119 N.J. at 644, 575 A.2d 858  also would seem to foreclose application of the doctrine of judicial estoppel.
In any event, the issue presented by this appeal is not whether the New Jersey courts should apply the doctrine of judicial estoppel to preclude a party who has pled guilty from disputing the factual basis of his plea in a subsequent judicial proceeding, but rather whether the Commission, an agency in the executive branch of government, is required to apply that doctrine in the *260 discharge of its regulatory responsibilities. Although our Supreme Court has recognized that issue preclusion doctrines may be applied in administrative proceedings, City of Hackensack v. Winner, supra, 82 N.J. at 31-33, 410 A.2d 1146, it has also recognized that administrative agencies possess wide latitude in selecting the appropriate procedures by which to perform their regulatory responsibilities. In re Request for Solid Waste Util. Customer Lists, 106 N.J. 508, 519-20, 524 A.2d 386 (1987); In re Kallen, 92 N.J. 14, 24-25, 455 A.2d 460 (1983); Texter v. Department of Human Servs., 88 N.J. 376, 385-86, 443 A.2d 178 (1982). "[P]rocedures and techniques developed to handle the operation and business of the courts may not be transported in toto or imported wholesale into administrative agencies." City of Hackensack v. Winner, supra, 82 N.J. at 29, 410 A.2d 1146. Since the purpose of the doctrine of judicial estoppel is to protect the integrity of the tribunal before which a party seeks to contest facts which he has previously admitted through a guilty plea, Edwards v. Aetna Life Ins. Co., supra, 690 F.2d at 598, it is that tribunal which should determine whether or not to invoke this doctrine. For example, some federal courts have held that the application of judicial estoppel should be determined under federal law even in a diversity action, because this doctrine "relates to protection of the integrity of the federal judicial process." Allen v. Zurich Ins. Co., 667 F.2d 1162, 1167 n. 4 (4th Cir.1982); accord Edwards v. Aetna Life Ins. Co., supra, 690 F.2d at 598; see generally Mark J. Plumer, Note, Judicial Estoppel: The Refurbishing of a Judicial Shield, 55 Geo.Wash.L.Rev. 409, 426-35 (1987). Similarly, it should be within the Commission's discretion to determine whether to invoke the doctrine of judicial estoppel to protect the integrity of its administrative processes.
I perceive no basis for concluding that the Commission abused its discretion in declining to invoke the doctrine of judicial estoppel to preclude Gonzalez from presenting evidence which contested certain of the facts presumably admitted by his prior guilty plea. Although the concern expressed by the Commission's dissenting member that public confidence in the Commission may be undermined *261 by its permitting a party to relitigate facts underlying a guilty plea is both legitimate and serious, there are substantial countervailing policy considerations which support the Commission majority's decision not to preclude Gonzalez from presenting an exculpatory version of the disqualifying offense to which he pled guilty. As one commentator has noted:
When a court invokes judicial estoppel, not only is a litigant deprived of the legal right to assert a position, but the court also is deprived of its opportunity to exercise the full extent of its truthfinding function. There is a possibility, therefore, that the truth will be suppressed.
[Boyers, supra, 80 Nw.U.L.Rev. at 1254-55.]
See also Henkin, supra, 13 U.Pa.L.Rev. at 1740.
The need for an unfettered inquiry into the true facts is extremely important in administering a regulatory provision such as N.J.S.A. 5:12-90(h), which requires the Commission to determine the nature and circumstances of a disqualifying offense before it reaches a judgment as to whether an applicant has been "rehabilitated." When an applicant gives testimony regarding the nature and circumstances of such an offense, the Commission has an obligation to evaluate his credibility. The Commission majority expressed an understandable concern that its discharge of this responsibility would be artificially constrained if it were precluded from evaluating the credibility of exculpatory testimony:
While the Commission has often stated that a Respondent who denies that he committed the offense to which he has pled guilty calls his credibility into question, such a denial does not lead inexorably to a finding that such testimony is not believable.
... In many cases of this nature, this testimony would not be found credible and such a finding would impact negatively upon a determination as to rehabilitation, good character and/or waiver. In certain cases, however, that testimony may be believable and persuasive.
The existence of a guilty plea does not abrogate the factfinder's responsibility to assess a witness' credibility....
Thus, Gonzalez' testimony regarding the disqualifying incident, whether in the vein of an acknowledgement of wrongdoing, a mitigation of the seriousness of the conduct or a protestation of innocence, is assessed in making critical findings as to credibility, rehabilitation and good character.
Our role in reviewing an administrative agency's choice of policy is limited. "[C]ourts are not free to substitute their judgment as *262 to the wisdom of a particular administrative action for that of the agency so long as that action is statutorily authorized and not otherwise defective because arbitrary or unreasonable." New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562-63, 384 A.2d 795 (1978). Thus, the question is not whether we consider the concerns of the Commission's dissenting member regarding the integrity of the administrative process to be more compelling than the reasons given by the Commission's majority for allowing Gonzalez to present exculpatory evidence, but rather whether the Commission's decision is arbitrary or unreasonable. Since the Commission's decision reflects the prevailing view that neither collateral estoppel nor any other doctrine of issue preclusion forecloses a party who has pled guilty from contesting a fact directly or impliedly admitted by his plea, I do not see how that decision can be called arbitrary or unreasonable. Therefore, I would affirm the Commission's decision.
NOTES
[1] Adriel Gonzalez has not filed a brief or otherwise participated in this appeal.
[2] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[3] If Gonzalez had proceeded to trial and been convicted of distributing drugs within 1,000 feet of school property, he would have faced imprisonment, with a mandatory period of parole ineligibility. N.J.S.A. 2C:35-7. As a result of his plea bargain, however, Gonzalez was sentenced to thirty days in jail and placed on probation.
[1] A similar provision applies to persons required to be registered as casino hotel employees. N.J.S.A. 5:12-91(d). There is no similar provision in N.J.S.A. 5:12-89, which governs the licensing of casino key employees. An applicant for a casino employee license also must satisfy other requirements including a demonstration of "good character, honesty and integrity." N.J.S.A. 5:12-89(b)(2); N.J.S.A. 5:12-90(b).
[2] The Division and Commission apparently agree that N.J.S.A. 5:12-90(h) applies not only to the initial licensing of an applicant for a casino employee license but also to any proposed license revocation. Cf. Dunston v. Department of Law & Pub. Safety, supra, 240 N.J. Super. at 59-62, 572 A.2d 645.
[3] Since neither the Division nor Gonzalez offered the plea transcript into evidence at the hearing before the Commission, the record does not reveal what factual basis Gonzalez provided for his plea.
[4] This comment to the Restatement further notes that "[a] defendant who pleads guilty may be held to be estopped in subsequent civil litigation from contesting facts representing the elements of the offense" under other principles of law beyond the scope of the Restatement of Judgments. This presumably would include the doctrine of judicial estoppel, discussed infra at 256-61, 641 A.2d at 1068-71.
[5] The part of this doctrinal formulation which requires "prejudice" to an "adverse party" reflects some confusion between the doctrines of judicial estoppel and equitable estoppel. As one commentator has noted:

[C]ourts have blurred the distinction by occasionally mislabelling as "judicial estoppel" that which is really equitable estoppel....
... A party may invoke equitable estoppel to prevent his opponent from changing positions if (1) he was an adverse party in the prior proceeding; (2) he detrimentally relied upon his opponent's prior position; and (3) he would now be prejudiced if a court permitted his opponent to change positions. Equitable estoppel "focuses on the relationship between the parties," and is designed to protect litigants from injury caused by "less than scrupulous opponents." By contrast, judicial estoppel focuses on "the relationship between the litigant and the judicial system," and is designed "to protect the integrity of the judicial process."
... By definition, equitable estoppel requires privity, reliance, and prejudice because the doctrine concentrates on the relationship between the parties to a specific case. Conversely, none of these elements is or should be required under the judicial estoppel doctrine.
[Rand G. Boyers, Comment, Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel, 80 Nw.U.L.Rev. 1244, 1248-49 (1986).]
Consequently, the formulation of the judicial estoppel doctrine in Chattin should be modified to eliminate the requirement of prejudice to an adverse party. However, such a reformulation would not affect the result in this appeal.