88 N.J. Super. 560 (1965)
213 A.2d 26
ROSE REARDON, DENNIS REARDON AND KATHLEEN REARDON, PLAINTIFFS,
v.
JAMES ALLEN, DEFENDANT.
LEE WEST CONYERS, PLAINTIFF,
v.
JAMES ALLEN, KATHLEEN REARDON AND DENNIS REARDON, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 2, 1965.
*561 Mr. Louis Chodash for plaintiffs Reardon (Mr. Raymond G. Becker, attorney).
Mr. Peter R. Feehan for defendants Reardon in the action by Conyers (Mr. William V. Breslin, attorney).
Mr. Joseph J. MacDonald for defendant Allen (Messrs. Hein, Smith & Mooney, attorneys).
BOTTER, J.S.C.
These consolidated actions were brought for personal injuries arising out of a collision between two automobiles, one owned by Dennis Reardon and one by James Allen. Previously, in a subrogation action, Reardon's insurance company had recovered a judgment against Allen for the damage to Reardon's automobile. This motion for summary judgment seeks to apply that judgment to the Reardon *562 personal injury action to determine its outcome on the principles of res judicata and collateral estoppel. Two issues are posed. Does the judgment in the property damage action preclude Allen from disputing liability in this action? Is Dennis Reardon barred from asserting a claim for medical expenses and loss of services, derived from his wife's injuries, because that claim was not asserted in the earlier action in which he was the named plaintiff?
The accident occurred on December 28, 1961 in Saddle Brook, New Jersey. Reardon's vehicle was driven by his daughter Kathleen; Reardon's wife, Rose, was a passenger. James Allen was driving his own vehicle, and Lee West Conyers was his passenger. The Reardons were residents of Bergen County; Allen and Conyers were residents of Passaic County.
Reardon carried collision insurance. After paying his claim, Reardon's insurance company, as assignee or subrogee, brought an action against Allen in the name of Dennis Reardon for the property damage. The action was commenced in the Passaic County District Court in May 1962. On January 9, 1963 the action was tried before the court without a jury, and a judgment was recovered against Allen in the sum of $657.09 plus costs. No appeal was taken from that judgment; in fact, it has been satisfied.
Thereafter these actions were commenced in the Superior Court by the Reardons and by Conyers, on July 31, 1963 and December 27, 1963, respectively, and were consolidated for trial. Rose and Kathleen Reardon sue Allen for personal injuries. Dennis Reardon sues Allen per quod. The action brought by Conyers for his personal injuries is against Allen, Dennis Reardon and Kathleen Reardon.
The Reardons have moved for summary judgment to preclude Allen from contesting liability. This application also includes Dennis Reardon's motion to strike the defense in Allen's answer which asserts res judicata as a bar to Reardon's derivative claim. Allen contends that Dennis Reardon cannot maintain his cause of action because as plaintiff in the first *563 action Reardon did not plead all claims which he had arising out of the same occurrence. This issue will be dealt with first.
In Ochs v. Public Service Railway Co., 81 N.J.L. 661 (E. & A. 1911), it was held that a person who has recovered in an action for property damage can thereafter maintain a separate action against the same defendant for personal injuries suffered in the same accident. The injury suffered is held to be the wrong, not defendant's negligence alone; therefore separate causes of action for personal injury and for property damage may arise from one act of negligence. In Ochs the court noted that our Legislature has provided different periods of limitations within which to bring an action for personal injuries (N.J.S. 2A:14-2) and an action for property damage (N.J.S. 2A:14-1), and in this circumstance found support for its holding.
In Esper v. Manhattan Transit Co., Inc., 112 N.J.L. 186, 188 (Sup. Ct. 1934), affirmed o.b. 115 N.J.L. 113 (E. & A. 1935), the court accepts Ochs as an exception to the rule that "a party who has suffered damages by reason of the wrong of another must present his entire claim in one action * * *." However, the policy of avoiding multiple litigation by joining in one action all claims arising out of a single transaction strongly recommends that the result in Ochs should be repudiated. The question is not simply whether an act of negligence gives rise to one or two causes of action where both personal injuries and property damage occur. The question is, given two causes of action arising simultaneously in favor of one person against another, should the claimant be required to sue for both claims in the first action. Efficient judicial administration normally requires that "all facets of a single dispute between parties be completely determined in one action." Applestein v. United Board & Carton Corp., 35 N.J. 343, 356 (1961); Falcone v. Middlesex County Medical Society, 87 N.J. Super. 486 (App. Div. 1965); and see Kelleher v. Lozzi, 7 N.J. 17 (1951), holding that Kelleher was estopped from suing Lozzi for personal injuries and property damage when an earlier action brought by Lozzi against *564 Kelleher was settled by payment to Lozzi, even though the assertion of Kelleher's claim by way of a counterclaim was permissive, not mandatory, under Rule 3:13-1 (now R.R. 4:13-1). Absent exceptional circumstances, a person who has a claim for property damage and personal injuries arising simultaneously should be required to join both claims in one action. This is the majority rule. Sibson v. Robert's Express, Inc., 104 N.H. 192, 182 A.2d 449 (Sup. Ct. 1962); Mills v. DeWees, 141 W. Va. 782, 93 S.E.2d 484, 62 A.L.R.2d 965 (Sup. Ct. App. 1956); Dearden v. Hey, 304 Mass. 659, 24 N.E.2d 644, 127 A.L.R. 1077 (Sup. Jud. Ct. 1939); Annotation "Simultaneous injury to person and property as giving rise to single cause of action," 62 A.L.R.2d 977 (1958); Annotation 127 A.L.R. 1081 (1940); 1B Moore, Federal Practice (2d ed. 1965), par. 0.410, p. 1168.
However, a different rule is justified where, as here, an insurance company has been subrogated to the property damage claim and has brought suit first. The insurance company has become the owner of the property damage claim, the true party in interest, and its own attorneys control the litigation. Although the property damage action was brought in the name of Dennis Reardon, he was merely a formal party, one without control over the action and without a proprietary or financial interest in its outcome (except, possibly, for a portion of the recovery based upon a deductible provision in the policy). Accordingly, in these circumstances Dennis Reardon will not be precluded from later suing on his own cause of action for losses due to his wife's injuries. Vasu v. Kohlers, Inc., 145 Ohio St. 321, 61 N.E.2d 707, 166 A.L.R. 855 (Sup. Ct. 1945); American Insurance Co. v. Ellsworth Freight Lines, Inc., 113 Ohio App. 426, 178 N.E.2d 819 (Ct. App. 1960); General Exchange Ins. Corp. v. Young, 357 Mo. 1099, 212 S.W.2d 396 (Sup. Ct. 1948); Note, "Developments in the Law  Res Judicata," 65 Harv. L. Rev. 818, 829 (1952); see also Restatement, Judgments, sec. 81, p. 381, sec. 80(2), illustration #5, p. 369 (1942), and Annotation 62 A.L.R.2d 997, supra, at pp. 989-995, collecting *565 cases for and against this proposition. Similarly, the rule of Kelleher v. Lozzi, supra, does not apply to preclude an action by A against B where A's insurance carrier, not A himself, had previously paid B to settle B's claim against A. Our courts have held that in this circumstance an insured will not be prejudiced by his carrier's exercise of rights under the insurance policy. Klotz v. Lee, 36 N.J. Super. 6 (App. Div. 1955); Isaacson v. Boswell, 18 N.J. Super. 95 (App. Div. 1952); De Carlucci v. Brasley, 16 N.J. Super. 48 (Law Div. 1951).
The second issue to be resolved is whether the Reardons may now use the judgment of the first action offensively against Allen to establish his liability, leaving only the question of damages to be tried. In the property damage subrogation action Allen's negligence and the contributory negligence of Kathleen Reardon were in issue and were decided against Allen. Allen's insurance carrier furnished the defense in the property damage action and is also defending here. The Reardons contend that Allen has had his day in court and should be bound by the result.
The precise question posed has not been answered by any reported decision in this State. The search for an answer leads into a field of considerable controversy. The basic objective is judicial finality. Issues once determined should not be relitigated. Parties should not be vexed by repeated litigation. Public policy demands economy in the use of judicial machinery. Reliance, repose and respect for the judicial pronouncement ask that the final determination of an issue in one action will not be followed by a retrial and the threat of an inconsistent result in a later action. To fulfill these objectives final judgments of a court of competent jurisdiction are accorded a binding effect upon the parties and their privies not only as to the same cause of action (res judicata), but, in respect to a different cause of action in subsequent litigation, as to matters necessarily litigated and determined in the first action (collateral estoppel). Lubliner v. Bd. of Alcoholic Beverage Control, Paterson, 33 N.J. 428, *566 435 (1960); McAndrew v. Mularchuk, 38 N.J. 156 (1962); Bango v. Ward, 12 N.J. 415 (1953); Hudson Transit Corp. v. Antonucci, 137 N.J.L. 704 (E. & A. 1948); Esper v. Manhattan Transit Co., Inc., supra; In re Walsh's Estate, 80 N.J. Eq. 565 (E. & A. 1909); Freitag v. Renshaw, 9 N.J. Misc. 1161 (C.P. 1931); 1B Moore, Federal Practice (2d ed. 1965), par. 0.405, p. 621; Restatement, Judgments, sec. 68, comment, pp. 293-294.
Where the parties are the same in the two cases it is easy to see that one should be bound and the other should benefit by the result in the case tried first. Esper v. Manhattan Transit Co., supra; Wirth v. Slinn, 10 N.J. Misc. 361, 158 A. 743 (Sup. Ct. 1931); Freitag v. Renshaw, supra. The question is, how far can the judgment be carried beyond the immediate parties?
If Reardon had sued first for personal injuries and lost, his insurance carrier might not be able to recover in a subrogation action for property damage brought thereafter. See Providence Washington Ins. Co. v. Hogges, 67 N.J. Super. 475, 478 (App. Div. 1961). It is said that the subrogee "steps into the shoes of the insured and can recover only if the insured likewise could have recovered." Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 172 (1954). This result could be produced in terms of res judicata by holding that the insurance carrier was in privity with the insured, with privity connoting "such connection in interest with the litigation and the subject matter as in reason and justice precludes a relitigation of the issue." See Hudson Transit Corp. v. Antonucci, supra, 137 N.J.L., at p. 707; Bango v. Ward, supra, 12 N.J., at p. 422. The result is supported by the view that the insurance carrier should have intervened in the personal injury action of its subrogor, if intervention was possible. See Sibson v. Robert's Express, Inc., supra. However, in Emmco Ins. Co. v. Brown, 178 A.2d 429 (Mun. Ct. App. D.C. 1962), the converse of the case at hand, the court held that an insurance company can maintain its property damage subrogation action in the municipal court although defendant had prevailed *567 against the automobile owner's personal injury claim in an upper court. The court noted that the subrogee was not able to intervene in the upper court action because of jurisdictional limitations, and could not control that action by participating therein or by appealing the adverse judgment. In these circumstances it was expressly held that the subrogee and subrogor were not in privity. This holding conforms to the views expressed in Restatement, Judgments, sec. 89, comment (i), p. 440, and sec. 81, p. 381 (1942).
Plaintiffs were not parties to the first action except to the extent that Dennis Reardon was the nominal plaintiff. This means that if Allen had prevailed in the subrogee's property damage action he could not use that judgment to preclude plaintiffs in this action. See Smith v. Fischer Baking Co., 105 N.J.L. 567 (E. & A. 1929), holding the vehicle owner's property damage claim is not barred by an adverse judgment in the personal injury action of his driver-employee. Without control over the action, without the power to decide when and where the action should be commenced, or if an appeal should be taken from an adverse decision, it would be unreasonable to hold that a personal injury claimant is bound by the adverse result in his insurer's property damage subrogation action. This would be too high a price to pay for collision insurance. Thus, mutuality of estoppel would be lacking if Allen were now bound by the first judgment. There is a temptation to say that a judgment is not "conclusive in favor of a person unless it would be equally conclusive against him." Miller v. Stieglitz, 113 N.J.L. 40, 44 (E. & A. 1934). This is the doctrine of mutuality of estoppel.
The doctrine of mutuality has been severely criticized. Jeremy Bentham described mutuality of estoppel  that a stranger who cannot lose also cannot benefit from the outcome of a case  as a principle imported into the courtroom from the gaming table. 7 Works of Jeremy Bentham 171 (Bowring ed. 1843). With the debasement of this doctrine considerable support has grown in recent years for the view that a party may be bound by the determination of an issue *568 although the reciprocal use of the judgment is unavailable. This view holds that a party is entitled to his day in court on a particular issue and is not entitled to his day in court against a particular adversary. See McAndrew v. Mularchuk, supra, 38 N.J., at p. 161; Bernhard v. Bank of America Nat. Trust & Savings Ass'n, 19 Cal.2d 807, 122 P.2d 892 (Sup. Ct. 1942); United States v. United Air Lines, Inc., 216 F. Supp. 709 (E.D. Wash. 1962), affirmed sub nom. United Air Lines, Inc. v. Wiener, 335 F.2d 379 (9 Cir. 1964), petition for certiorari dismissed 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964); Israel v. Wood Dolson Co., 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97 (Ct. App. 1956); McCourt v. Algiers, 4 Wis.2d 607, 91 N.W.2d 194 (Sup. Ct. 1956); Note, "Privity and Mutuality in the Doctrine of Res Judicata," 35 Yale L.J. 607 (1926); Currie, "Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine," 9 Stan. L. Rev. 281, 308, 322 (1957); Note, "Developments in the Law  Res Judicata," 65 Harv. L. Rev., supra, at p. 862 (1952).
Professor James W. Moore has recently published a vigorous defense of mutuality, and the decisions of a majority of jurisdictions still fit the rule. 1B Moore, Federal Practice, supra, par. 0.412, pp. 1801-1812. The Restatement view is that the "assumed unfairness" in binding one party without binding another is not "of pervading importance and disappears when there are countervailing reasons for requiring one to be bound while the other is not." Restatement, Judgments, sec. 96 comment (a), p. 473 (1942). Nevertheless, with certain exceptions[1] not applicable here, the Restatement *569 would bind only parties who have actually been adversaries with respect to an issue adjudicated in the first proceeding. Restatement, Judgments, supra, sec. 82, p. 384. This must be regarded as the prevailing view. Creighton v. Ruark, 230 Md. 145, 186 A.2d 208 (Ct. App. 1962), and Ordway v. White, 25 Misc.2d 633, 204 N.Y.S.2d 209 (Sup. Ct. 1960), affirmed 14 App. Div.2d 498, 217 N.Y.S.2d 334 (App. Div. 1961), both holding that a passenger's judgment against drivers of two vehicles doesn't bar an action by one driver against the other; Raz v. Mills, 233 Or. 452, 378 P.2d 959 (Sup. Ct. 1963), holding that a husband cannot use a judgment in favor of his wife to establish the liability of a common adversary, defendant motorist; Elder v. New York & Pennsylvania Motor Express, Inc., 284 N.Y. 350, 31 N.E.2d 188, 133 A.L.R. 176 (Ct. App. 1940), holding that employee truck driver cannot use judgment for property damage recovered by his employer against a common adversary, defendant truck owner; Nevarov v. Caldwell, 161 Cal. App.2d 762, 327 P.2d 111 (D. Ct. App. 1958), hearing denied by Supreme Court, 327 P.2d, at p. 122, holding that parents of an infant passenger cannot use infant's judgment to establish negligence of a common adversary involved in a four-car accident; Price v. Atchison, Topeka & Santa Fe Ry. Co., 164 Cal. App.2d 400, 330 P.2d 933 (D. Ct. App. 1958), denying injured passenger in train derailment the use of two earlier judgments against the railroad company in favor of other passengers injured in the same accident; Motorlease Corp. v. Mulroony, 13 N.J. Super. 556 (App. Div. 1951), affirmed 9 N.J. 82 (1952), holding that vehicle owner is not barred by earlier determination that its driver was negligent in personal injury action brought by a common adversary; Hudson Transit Corp. v. Antonucci, supra, 137 N.J.L. 704 (E. & A. 1948), holding that the owner-bailor of a bus is not barred by a judgment in favor of a common adversary in an earlier action for property damage against the bailee-operator of the bus; Annotation "Judgment in action growing out of accident as res judicata, as to negligence or contributory negligence, *570 in later action growing out of same accident by or against one not party to earlier action," 23 A.L.R.2d 710, 717 (1952); Restatement, Judgments, supra, sec. 82, illustration #1, p. 387.
Rejecting mutuality exposes a defendant who is subject to multiple claims to considerable detriment. One is that he must evaluate the risk of the first case with an eye to those to come, including cases of adversaries not yet known. Another disadvantage may be illustrated by the example of an accident involving a bus, train or airplane in which a number of passengers are injured. If a judgment against the defendant in the first action can be used by all other claimants, the defendant must put up the most vigorous defense even when the first action presents a minor claim. A defendant who prevails in the first six actions must still defend against the remainder, because strangers to the action cannot be precluded from their day in court. Thereafter, if the seventh case is lost by the defendant, can the remaining claimants rely on that judgment, despite the contrary result in the earlier cases? Obviously, collateral estoppel could not be carried to this extreme.
The seriousness of these problems has been recognized repeatedly. Note, "Developments in the Law  Res Judicata," supra, 65 Harv. L. Rev., at pp. 864-865; Seavey, "Res Judicata with Reference to Persons neither Parties nor Privies," 57 Harv. L. Rev. 98 (1943); Currie, "Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine," supra; 1B Moore, Federal Practice, supra, at p. 1812. We must reject as unsatisfactory the justification for applying collateral estoppel as stated in Note, "Privity and Mutuality in the Doctrine of Res Judicata," supra, 35 Yale L.J., at p. 612. The writer argues that defendant who wins the first action will benefit by the experience of that trial and, besides, there is public advantage in reducing litigation by binding defendant to the first adverse judgment. See Professor Currie's stinging reply in "Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine," supra, 9 Stan. L. Rev., at pp. 286-288.
*571 Professor Currie suggests that collateral estoppel should not apply against a party who faces more than two successive actions because it would create these "intolerable anomalies" in the administration of justice. Ibid., at pp. 308, 322. He suggests as an alternative remedy that rules be adopted requiring that all claims arising from a single transaction or involving the same issues shall be joined or consolidated in a single action, to the extent possible. Ibid., at p. 320. (Cf. United States v. United Air Lines, Inc., supra. There, 24 actions for the death of passengers in an airplane crash were consolidated for trial in California, the trial lasting 15 weeks. The remaining cases from various jurisdictions in the United States were consolidated for trial in Nevada. In that litigation the court permitted plaintiffs to use the result of the first trial to establish liability against the common adversary, United Air Lines.) In appropriate cases collateral estoppel might be applied against a party who fails to take steps to unite litigation whenever jurisdictional boundaries and other conditions permit. See Sibson v. Robert's Express, Inc., supra.
We should consider what purposes will be frustrated if collateral estoppel is not applied. One objective is to protect a party against repeated litigation of the same issue. However, defendant Allen does not complain, and his present adversaries have not yet litigated the issue even once, although they may have testified in the first trial. Allen could not have avoided the separate trials. He could not compel plaintiffs to commence suit in time to permit consolidation. On the other hand, plaintiffs could have started suit more promptly and sought removal of the county district court action to the Superior Court and consolidation with the personal injury actions. R.R. 4:43-1.
To allow plaintiffs the benefit of the first judgment may actually increase litigation and delay in some cases. Claimants might be inspired to delay their personal injury actions in the hope that the first action by another claimant produces a favorable result. Two chances are better than one. The *572 delay in bringing an action would deprive courts of the opportunity to consolidate the actions on motion, or on the court's own initiative, as contemplated by R.R. 4:43-1.
It seems unfair to a defendant to allow judgments for a relatively small subrogated property damage claim, often rendered in a court of limited jurisdiction, to determine the outcome of more serious personal injury actions. See Nevarov v. Caldwell, supra, where the court expressly rejected the sweeping pronouncements of the Bernhard case, supra, based on these very practical considerations. The threat of collateral estoppel could impede the speedy disposition of smaller claims. More jury trials would be demanded in the county district courts; extensive discovery activities would be generated, with a corresponding increase in motions, and depositions taken in the first action would be repeated in each successive action because strangers, without the right of cross-examination, are not bound. More appeals would be taken in an effort to avoid the widespread consequences of an adverse judgment. Moreover, if we consider that collateral estoppel would impose hardship on a defendant, who would have so much at stake in the first action, how much more unfair it would seem to the person in pursuit of a relatively small claim. What claimant would come forward to engage a defendant forced into such desperate measures? The result would be that all claimants would shrink back, until coerced by the statute of limitations, perhaps, or by other factors, to begin suit, for the claimant who goes first has the most to lose, and the one who goes last the least, where judgments will be put to such collateral use. Thus, there is little promise that in these cases collateral estoppel would produce economies in the use of judicial machinery sufficient to justify the detriment to a defendant who did not choose the time or the place or the adversary with whom to litigate.
A denial of collateral estoppel may foster some inconsistencies in judicial decision, providing the defendant loses the first action, because he may win the next. If he prevails, however, he will still be required to litigate his liability *573 against other claimants, such as plaintiffs here, all of whom have separate causes of action. These later actions may produce inconsistent results. Moreover, even if collateral estoppel applies as between Reardon and Allen, Conyers is still entitled to assert that Reardon's driver was negligent, and a result inconsistent with the first judgment can be obtained. Thus, another objective of collateral estoppel, the avoidance of inconsistent results, cannot sufficiently justify the application of the rule in this case.
For the foregoing reasons, the judgment in the property damage subrogation action cannot be used by plaintiffs to establish Allen's liability for their personal injuries. The motion for summary judgment is denied, except that Allen's defense of res judicata as to Dennis Reardon's per quod claim is stricken.
NOTES
[1] The exceptions to the requirement of mutuality usually recognized are in cases adjudicating the status of persons or property or issues affecting parties who have a relationship of secondard or derivative liability, such as principal and agent or indemnitor and indemnitee. See Von Moschzisker, "Res Judicata," 38 Yale L.J. 299 (1929); 1B Moore, Federal Practice, supra, par. 0.412, pp. 1813-1834; Restatement, Judgments, supra, secs. 96-99, pp. 472-495; McAndrew v. Mularchuk, supra, 38 N.J., at p. 160; Carter v. Public Service Gas Co., 100 N.J.L. 374 (E. & A. 1924); Canin v. Kesse, 20 N.J. Misc. 371, 28 A.2d 68 (D. Ct. 1942).