SMALL, J.T.C.
The Director of the Division of Taxation moves to dismiss Fort Lee’s challenge to its 1992 and 1993 chapter 123 ratios on several procedural grounds.
In Fort Lee Bor. v. Director, Div. of Taxation, 12 N.J.Tax 299 (Tax 1992), aff'd o.b., 13 N.J.Tax 323 (App.Div.1993), certif. denied, 134 N.J. 563, 636 A.2d 521 (1993), this court denied on various procedural grounds Fort Lee’s challenge to the October 1, 1991, state school aid table, N.J.S.A 54:1-35.1. In this case, Fort Lee challenges the average ratio and common level ranges (the “chapter 123 table”) for Fort Lee, promulgated on April 1, 1992, and April 1, 1993, pursuant to N.J.S.A 54:l-35b.
The importance of the school aid ratio is described in Kearny v. Director, Div. of Taxation, 11 N.J.Tax 232 (Tax 1990). In particular, the Kearny court explained the use of the school aid ratio as the basis for deriving other ratios which determine the distribution of state aid and the apportionment of public expenses. Id. at 238-39. In addition, the calculation and use of the school aid table and the chapter 123 table, and their relationship to each other, was described in detail by this court in Fort Lee Bor. v. Director, Div. of Taxation, supra, 12 N.J.Tax at 301-306 and n. 3.
In this case, Fort Lee challenges the classification of residential co-operative apartments with respect to its 1992 and 1993 chapter 123 tables. The only sales of co-ops in Fort Lee which could effect the changes sought by Fort Lee are those which were first *116 used in calculating its 1990 school aid ratio. Fort Lee challenged its 1990 ratio and settled the case; the issue of the classification of co-ops was never raised by the parties or addressed by the court. Unless the 1990 school aid ratio component of the 1992 and 1993 chapter 123 ratio calculations is changed, Fort Lee cannot obtain relief in this case.
The substantive factual and legal bases of the challenges in the earlier school aid ratio ease before this court and the present chapter 123 ratio cases are identical. However, the procedural posture of the parties in the two cases is different. The Director of the Division of Taxation has moved to dismiss the present complaint on procedural grounds different from those raised in the earlier case. This court, perhaps improvidently, invited this litigation. Fort Lee, supra, 12 N.J.Tax at 317. Nevertheless, after careful consideration of all of the arguments raised by Fort Lee, I have concluded that although the merits of Fort Lee’s claim need to be addressed, this court would violate our procedural rules were it to reach that issue in this case.
I
The substantive basis of Fort Lee’s claim is that in calculating the school aid ratio and the April 1, chapter 123 table, co-operative apartments should be classified as class 2 property (residential property of four dwelling units or less), not as class 4 property (all other real estate, including commercial property, industrial property, and apartment houses). In Fort Lee Bor. v. Director, Div. of Taxation, supra, this court suggested that the Director issue a regulation setting forth her position and providing Fort Lee and other interested parties an opportunity to obtain a determination on the merits if they were dissatisfied with that position. 12 N. J.Tax at 316. It does not appear that the Director has followed that suggestion.
In the earlier case, the Director successfully argued that the entire controversy doctrine, adopted under the New Jersey court rules pursuant to R. 4:30A, precluded this court from considering an issue which could have been raised, but was not, in Fort Lee’s *117 prior challenge to the 1990 school aid table. 12 N.J.Tax at 306-308. It should be noted that only by revising the 1990 school aid ratio could Fort Lee obtain relief with respect to the 1991 school aid table. See generally 12 N.J.Tax at 301-306.
In the earlier Fort Lee case, this court also agreed with the Director that in a challenge to the current year’s state school aid table, the court may not re-open or re-examine that portion of the calculation which makes use of the prior year’s ratio. 12 N.J.Tax at 308-310 (citing Kearny v. Director, Div. of Taxation, 11 N.J.Tax 497, 500 (Tax 1991), aff'd, 13 N.J.Tax 119 (App.Div.1992)). “A prior year’s table is a fait accompli. ” Kearny, 11 N.J.Tax at 501.
Finally, in the first Fort Lee decision, this court accepted the Director’s contention that absent a claim of school aid harm for 1991, Fort Lee could not challenge the 1991 school aid table. 12 N.J.Tax at 310-315.
Notwithstanding this court’s decision in the Director’s favor in the first case, this court recognized that if Fort Lee were correct with regard to the proper classification of co-operative apartments in the calculation of the state school aid ratio, then Fort Lee would suffer real harm with respect to defending its local property tax assessments. This is because the October 1 state school aid ratio, with revisions, is used as the basis for deriving the chapter 123 average ratio published the following April 1. N.J.SA 54:1-35a(a). Thus, this court suggested that although Fort Lee could not challenge the school aid ratio, it might consider pursuing a separate challenge to the April 1 table. 12 N.J.Tax at 317. In effect, Fort Lee has done this by filing the present complaints which the Director now seeks to dismiss on several procedural grounds.
II
The Director asserts that there is no statutory authority for challenging the April 1 chapter 123 list of average ratios and common level ranges. The Director contends that N.J.SA 54:51A-4 provides specific authority for challenges to (1) county *118 equalization tables, (2) the state equalization table promulgated under N.J.S.A 54:1-35.1 (the October 1 school aid table), and (3) state equalization tables promulgated under authority of statutes other than N.J.S.A 54:1-35.1. Since the April 1 table is not specifically described in N.J.S.A 54:51A-4, the Director urges, that the statute provides no authority for appealing the April 1 chapter 123 table.
With regard to appeals before the Tax Court:
Except with respect to review of equalization tables, all complaints seeking review of actions of the Director of the Division of Taxation or any other State agency or officer with respect to any tax matter or of a county recording officer with respect to the realty transfer tax or any appeal with respect to property tax of railroads shall be prosecuted in accordance with the provisions of article 2 of this chapter.
[N.J.S.A 54:51A~13 (emphasis added).]
The Director suggests that the April 1 table is an equalization table and thus, cannot be challenged under N.J.S.A 54.-51A-13. The statutory mandate to publish the April 1 table appears under Article 5A of Chapter 1 of Title 54, entitled “Table of Equalized Valuations.” See N.J.S.A 54:l-35a through N.J.S.A. 54:1-35.6. However, the primary sections relating .to the April 1 table, N.J.S.A 54:l-35a and N.J.S.A 54:l-35b, make no reference to the term “equalization table” in either their titles or texts.
In contrast, other sections of the statute, which are specifically subject to challenge under N.J.S.A. 54:51A-4, use terminology expressly referring to “equalization.” See N.J.S.A 54:1-33; N.J.S.A. 54:1-35.1; and N.J.S.A 54:3-17. Under the principle of expressio unius est exclusio alterius (the expression of one is the exclusion of others), affirmative expression ordinarily implies the negation of any other alternative. N.J.S.A 1:1-1 n. 245. See Gabel v. Manetto, 177 N.J.Super. 460, 464, 427 A.2d 71 (App.Div. 1981); see also, Garden State Racing Ass’n v. Cherry Hill Tp., 1 N.J.Tax 569, 579 (Tax 1980); Emanuel Missionary Baptist Church v. Newark, 1 N.J.Tax 264, 269 (Tax 1980).
Furthermore, the logic of the relationship between N.J.S.A. 54:51A-4 and N.J.S.A. 54:51A-13 is that, together, they provide authority for challenging all tax matters in New Jersey. *119 The general method for tax appeals is prescribed under N.J.SA 54:51A-13. That section excepts only the review of equalization tables, which are reviewable under N.J.SA 54:51A-4. Since the chapter 123 table authorized under N.J.S.A 54:l-35b is not an equalization table, it cannot be challenged under N.J.SA 54:51A-4, but is subject to review under N.J.S.A 54:51A-13, the general provision for tax appeals. Hence, Fort Lee would be precluded from challenging only the chapter 123 table by way of a challenge to the equalization table, making a separate action challenging the chapter 123 table appropriate in the present case.
The Director further argues that even if the provisions under N.J.SA 54:51A-13 provide Fort Lee with a separate and distinct cause of action, the April 1 chapter 123 table is not subject to review because the Director’s duties are purely ministerial and do not constitute reviewable “action.” See N.J.SA 54:51A-13 (expressly referring to review of “actions” by the Director). Although the conduct of the Director in adopting the April 1 table from the October 1 table may be mechanical and prescribed by statute, such conduct does not happen without the Director performing some act. Since the uses of the October 1 and April 1 tables are different, logic compels this court to conclude that the adoption of the April 1 table is an “action” within the meaning of N.J.SA 54:51A-13.
Ill
The Director further argues that the prior challenge by Fort Lee addressed the identical issues raised in this ease, and that Fort Lee’s challenge is therefore barred under the doctrine of res judicata. The doctrine of res judicata provides that
[a] cause of action once finally determined between parties on the merits by a tribunal having jurisdiction cannot be relitigated by those parties, or their privies, in a new proceeding.
[Roberts v. Goldner, 79 N.J. 82, 85, 397 A.2d 1090 (1979).]
The Director’s arguments rely on the premise that the factual claims disputed here are identical to those in the first Fort Lee case. If the Director were correct, the doctrine of res judicata *120 would apply. In the first case, however, this court never reached the factual merits of the disputed claim, but disposed of the matter on procedural grounds. Although the parties are the same, and the substantive basis of Fort Lee’s challenge is the same (the proper classification of co-operative apartments), the procedural posture is different.
The earlier case involved a challenge to the school aid table, which has many more uses than the April 1 chapter 123 table. Moreover, the standards for review are different. In the first case, the standard was whether the Director’s ratio “could not reasonably be justified,” pursuant to N.J.S.A 54:51A-4(c), a standard which is not expressed under N.J.S.A 54:51A-13. Thus, a procedural disposition of the October 1 school aid table is not res judicata with respect to a substantive challenge to the April 1 table.
IV
The Director argues that the entire controversy doctrine bars this challenge to the April 1,1992 and April 1,1993 tables, because Fort Lee could have, and should have, raised the issue it now advances when it initially challenged the October 1, 1990 school aid table. Had Fort Lee done so, the Director urges, the issue would have been resolved at that time.
The entire controversy doctrine was adopted in 1990 as R. 4:30A. This Rule provides that:
Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).
Note that the above rule does not define the entire controversy doctrine, as that task has been assumed by our courts. See Comment to R. 4:30A.
Our Supreme Court has held that “to the extent possible, courts must determine an entire controversy in a single judicial proceeding.” Cogdell v. Hospital Center at Orange, 116 N.J. 7, 26, *121 560 A.2d 1169 (1989). The joinder requirements of the entire controversy doctrine are designed to achieve economy in litigation by avoiding the waste, inefficiency, delay, and expense of piecemeal and fragmented litigation. Id. at 15, 560 A.2d 1169. The doctrine is equitable in nature and is fundamentally predicated upon “judicial fairness and will be invoked in that spirit.” Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 343, 476 A.2d 250 (1984).
Thus, as in the case of all other preclusionary doctrines, application of the entire controversy doctrine requires that the party whose claim is being sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original action. See, e.g., Thornton v. Potamkin Chevrolet, 94 N.J. 1, 462 A.2d 133 (1983); Reardon v. Allen, 88 N.J.Super. 560, 564, 213 A.2d 26 (Law Div.1965).
In the first Fort Lee case, this court was persuaded that the entire controversy doctrine was dispositive in the resolution of that litigation. That ease involved successive appeals of two ■ school aid tables, where the issues applied only to the first year’s table, and the effect of the first year’s table on the second year’s table. 12 N.J.Tax at 306. Having challenged the first year’s table, Fort Lee would not be heard to challenge the first year’s table again with regard to its effect on the second year’s table.
Fort Lee argues that this case is different and draws the court’s attention to East Windsor Tp. v. Division of Tax Appeals, 89 N.J.Super. 282, 214 A.2d 708 (App.Div.1965). In East Windsor, the Appellate Division allowed a municipality to challenge the use of a sale which was included in the calculation of the Director’s school aid ratio at the time the municipality challenged the county equalization table. The county equalization table, like the April 1 chapter 123 table, was derived from the school aid table. The municipality had challenged the school aid table, but had faded to dispute the sale it subsequently challenged in the context of its appeal of the county equalization table. The Appellate Division, without directly discussing the entire controversy doctrine, found that the reasons for not allowing a previously unchallenged sale to be challenged in a subsequent school aid table litigation did not *122 apply when the previously unchallenged sale was challenged in a non-schoól aid case. East Windsor, supra, 89 N.J.Super. at 289-90, 214 A.2d 708 (distinguishing Bayonne v. Division of Tax Appeals, 49 N.J.Super. 230, 139 A.2d 424 (App.Div.1958)).
Notwithstanding the generally mandatory application of the entire controversy doctrine, our Supreme Court has recognized that invoking the doctrine might pose problems in certain circumstances, and that the limits of the mandatory joinder rule
are reached when the joinder would result in significant unfairness or jeopardy to a clear presentation of the issues and just result. Implicit in the development of the entire controversy doctrine is the recognition that economies and the efficient administration of justice should not be achieved at the expense of these paramount concerns. The entire controversy doctrine does not demand monolithic adjudications. Any possible unfairness to litigants, confusion in the presentation of issues, administrative unmanageability, or distortion in the truth-determining process that may result from compulsory joinder of parties — or claims — can be eliminated or at least minimized by a trial court possessed of the discretion to excuse joinder or to order severance.
[Cogdell v. Hospital Center at Orange, supra, 116 N.J. at 27-28, 560 A.2d 1169 (quoting Crispin v. Volkswagenwerk, A.G., supra, 96 N.J. at 354-55, 476 A.2d 250 (Handler, J., concurring)).]
In Crispin, the Supreme Court adopted a balancing test in order to apply the entire controversy doctrine “flexibly and sensibly.” In such instances,
the trial court would be vested with the discretion to excuse joinder when there is good reason for doing so____ upon a balancing of the competing interests in providing a forum to plaintiffs for recovery of merited relief.....
[Crispin, supra, 96 N.J. at 352, 476 A.2d 250.]
In short, the Crispin Court placed great emphasis on avoiding private and public burden, as well as “significant unfairness or jeopardy to a clear presentation of the issues and a just result.” Id. at 354, 476 A2d 250.
In balancing the competing interests of Fort Lee and the Director here, this court must consider the fairness of a particular course of action as against the burden or hardship imposed upon each party. In this regard, it seems inequitable to Fort Lee that a municipality with chapter 123 harm but no school aid harm would have more difficulty obtaining relief than a municipality with both school aid harm and chapter 123 harm. Conversely, it *123 seems fair that the Director may be required to defend a challenge to a chapter 123 ratio that the Director adopted in the first instance.
As for the burden or hardship imposed upon each of the parties, if Fort Lee’s substantive argument is correct, then re-classifying co-operative apartments as class 4 rather than class 2 property would increase Fort Lee’s chapter 123 ratio, which in turn affects the common level of assessments for discrimination relief. If the correction is not made in this litigation, then Fort Lee will be forced to separately litigate the chapter 123 ratio in individual tax appeals, thereby expending valuable time and resources of both the municipality and taxpayers. In contrast, the Director will experience relatively little burden, since the issue in this case does not require the re-examination of any sales reflected in the prior year’s table, but only the reclassification of property.
Given that an incorrectly calculated chapter 123 ratio may cause harm and that a municipality may not be able to challenge that ratio at the time the school aid ratios are promulgated, the municipality should have the right to challenge a chapter 123 ratio at some time. Our Supreme Court’s decision in Murnick v. Asbury Park, 95 N.J. 452, 471 A.2d 1196 (1984), permits a challenge to the chapter 123 ratio in the context of an individual tax appeal. It makes little sense to preclude a municipal challenge to the school aid ratio at an earlier stage, i.e., when the table is published, simply because there is no school aid harm, when it is clear that a municipality will be forced to litigate each local property tax appeal in order to challenge the April 1 chapter 123 ratio.[1]
Nevertheless, the purpose of the entire controversy doctrine is to force parties to raise all issues they wish to raise in whatever *124 litigation they bring. The consequence of violating that Rule, R. 4:30A, is that a party is barred from raising the unarticulated issue at a later date in a separate suit. In this case, Fort Lee challenged the Director’s ratio in 1990 and failed to raise the issue of the classification of co-ops as class 2 or class 4. In its 1991 challenge to the Director’s school aid ratio, Fort Lee first attempted to raise the issue of the proper classification of co-ops for 1990. This court ruled that it could not. Now in its third and fourth suits, ostensibly over the 1992 and 1993 chapter 123 ratios, Fort Lee again tries to raise the issue of the proper classification of coops in 1990. Had Fort Lee not challenged the 1990 Director’s ratio, the entire controversy doctrine would not be applicable, and I would be inclined to hear the challenge. However, Fort Lee did challenge the 1990 Director’s ratio, and now can prevail only if this court reviews that 1990 ratio once again. In fact, any reclassification of co-ops for tax years after 1990 would be meaningless, since it appears that no sales of co-ops occurred in Fort Lee after 1990.
As previously discussed, the court in East Windsor Tp. v. Division of Tax Appeals, supra, allowed a complaining municipality to raise, in the context of a challenge to the 1964 county equalization table, a 1963 sale which was not identified in the municipal challenge to the Director’s 1963 school aid ratio. This almost 30 year-old decision would seem to mandate our hearing Fort Lee’s claim in this case. Nevertheless, the entire controversy doctrine and its interpretive case law are the bases for today’s denial of Fort Lee’s third attempt to litigate the classification of 1990 sales.
The entire controversy doctrine was not discussed in East Windsor. This court acknowledges, but rejects Fort Lee’s argument that somehow East Windsor carves out an exception to the entire controversy doctrine and the rule in Bayonne v. Division of Tax Appeals, supra, by permitting multiple appeals for collateral uses of the Director’s school aid table. Having no authority to do anything but follow an Appellate Division decision, I find that Fort Lee’s argument, in reliance on East Windsor, supra, is inconsistent with the now controlling entire controversy doctrine, which *125 does not appear to have been raised in East Windsor. See Pressler, Current N.J. Court Rules, comment 2 on R. 4:30A (1994).
Weighing the conflicting aims of efficient and fair tax administration, against the procedural niceties of the entire controversy doctrine, this court is in the position of having to decide the case on procedural grounds. See Handelman v. Handelman, 17 N.J. 1, 10-11, 109 A.2d 797 (1954) (“The general purpose of the rules is to broaden the procedural powers of our courts to the end that just dispositions on the merits may be facilitated and determinations on the basis of procedural niceties may be avoided.”).
The only distinction between this challenge to Fort Lee’s chapter 123 ratio and the earlier challenge to its school aid ratio in Fort Lee Bor. v. Director, Div. of Taxation, supra, is that in the earlier case there was no school aid harm, whereas, in this case there is real harm to Fort Lee!s ability to defend its tax assessments. In adding that distinction to the balancing test of the entire controversy doctrine, this court finds that the additional burden is not sufficient to mandate a different result when applying the entire controversy doctrine. The outcome may be harsh, but if the entire controversy doctrine is to have true meaning as a principle of law in this jurisdiction, it must prevent attempts to litigate issues overlooked by parties in their prior related eases.
V
Having determined that Fort Lee’s action is not barred by res judicata but is barred by the entire controversy doctrine, I am able to dispose of this case. Nevertheless, I choose to briefly discuss the third arm of the procedural trinity, the doctrine of collateral estoppel. By doing so, I hope to limit any confusion which may result from subsequent discussion of the matter, since the three doctrines are closely related. See Kostelanetz, Ritholz, Tigue & Fink v. Himmelwright, 254 N.J.Super. 249, 603 A.2d 168 (Law Div.1991), aff'd 264 N.J.Super. 578, 625 A.2d 488 (App.Div.), certif. denied, 133 N.J. 445, 627 A.2d 1149 (1993); Blair v. *126 Director, Div. of Taxation, 9 N.J.Tax 345 (Tax 1987), aff'd, 225 N.J.Super. 584, 543 A.2d 99 (App.Div.), certif. denied, 113 N.J. 349, 550 A.2d 460 (1988).
As recently repeated by our Appellate Division:
“Collateral estoppel is that branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.” State v. Gonzalez, 75 N.J. 181, 186 [380 A.2d 1128] (1977). For the doctrine to apply, “the factual issue must actually have been litigated and determined.” Allesandra v. Gross, 187 N.J.Super. 96, 105 [453 A.2d 904] (App.Div.1982).
[State v. Gonzalez, 273 N.J.Super. 239, 251-252, 641 A.2d 1060 (App.Div.1994).]
In the first action, Fort Lee Bor. v. Director, Division of Taxation, supra, the Borough of Fort Lee challenged the promulgation of the October 1,1991, school aid table by the Director. 12 N.J.Tax at 300. In that case, Fort Lee placed particular emphasis on the use of the school aid ratio as the common level assessment in resolving local property tax appeal discrimination cases under chapter 123. 12 N.J.Tax at 304-305.
This court held that, as a matter of law, “this court lacks authority to consider the merits of Fort Lee’s claim in the context of this litigation.” 12 N.J. Tax at 301. The court reasoned, under the entire controversy doctrine, that “having challenged the 1990 school aid table and resolved the issue involved, Fort lee may not now open issues it could have raised in last year’s litigation under the guise of a challenge to the current year’s school aid table. ” 12 N.J.Tax at 308 (emphasis added). Hence, the Fort Lee court based its holding on procedural grounds, never reaching the issue regarding the use of the school aid ratio in resolving chapter 123 discrimination cases.
In order to invoke the doctrine of collateral estoppel in the instant case, this court must now conclude that (1) an issue currently in dispute was a legal issue “actually determined” in the earlier proceeding, State v. Gonzalez, 75 N.J. 181, 380 A.2d 1128 (1977); (2) the issues presented in the two proceedings are identical, Ettin v. Ava Truck Leasing, Inc., 53 N.J. 463, 251 A.2d 278 (1969); and (3) the earlier proceeding afforded “a full and fair opportunity” to Fort Lee to litigate the contested issue, Pruden *127 tial Property and Casualty Ins. Co. v. Kollar, 243 N.J.Super. 150, 578 A.2d 1238 (App.Div.1990); State v. Gonzalez, 273 N.J.Super. 239, 250-252, 641 A.2d 1060 (App.Div.1994).
There is no dispute that the complaint filed by Fort Lee in the present ease is different from that filed by Fort Lee in the first action. Here, Fort Lee challenges its chapter 123 table of April 1, 1992 and April 1,1993, not the October 1,1991 school aid table challenged in the first action. Nevertheless, it seems clear that the second action presents an identical issue previously raised, fully and fairly argued, and completely decided in the first ease, because the only remedy for challenging the 1992 and 1993 chapter 123 ratios in the present case is to change the component of those ratios relating to the 1990 school aid ratio, a remedy which was asserted unsuccessfully by Fort Lee in the first action.
Thus, the issue “actually determined” in the first case was not whether co-operative apartments in Fort Lee should be re-classified, but whether Fort Lee could raise an issue it could have raised, but did not, in a prior case heard by this court. This is the same issue raised by the facts in the present case, regardless of the claims and assertions advanced by the parties. Since the doctrine of collateral estoppel precludes parties from relitigating identical issues, that doctrine now “estops” Fort Lee from seeking the same remedy denied by this court in the first action under the entire controversy doctrine.
Having failed to raise the issue of co-op classification in its initial challenge to the Director’s 1990 school aid table, Fort Lee is precluded, under the entire controversy doctrine, from raising that issue in subsequent actions with respect to the 1990 table. Since I previously decided that issue in my consideration of Fort Lee’s challenge to the Director’s 1991 school aid table, Fort Lee is now also collaterally estopped from raising the same issue in the context of its challenge to the chapter 123 tables for 1992 and 1993.
The Director’s motion to dismiss is granted.

 It should be noted that if the April 1 table is revised, there is no statutory authority for using that revision to revise the school aid table on which it is based, or any of the other ratios and formulae which are based on the school aid table, including subsequent school aid tables. See Fort Lee Bor. v. Director, Div. of Taxation, supra, 12 N.J.Tax at 316 (citing Kearny v. Director, Div. of Taxation, supra, 11 N.J.Tax at 238-39).