183 N.J. Super. 397 (1982)
444 A.2d 55
STEVEN A. MAIETTA, APPELLANT,
v.
NEW JERSEY RACING COMMISSION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 1982.
Decided February 23, 1982.
Before Judges MATTHEWS, PRESSLER and PETRELLA.
*398 Zulima V. Farber argued the cause for appellant (Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan, attorneys; Matthew P. Boylan, on the brief; Judy G. Russell on reply brief.)
John A. Covino, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James R. Zazzali, former Attorney General of New Jersey, Charles J. Hanlon, Jr., Deputy Attorney General, of counsel; Jeffrey S. Katz and Fredric M. Knapp, Deputy Attorneys General, of counsel and on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
This appeal raises the question of whether the Rehabilitated Convicted Offender Act (RCOA), N.J.S.A. 2A:168A-1 et seq., applies to the licensing function of the New Jersey Racing Commission and, if so, whether the Commission mistakenly exercised its discretion in denying a groom's license to appellant Steven A. Maietta despite the favorable recommendation of the administrative law judge.
The facts, as found by the administrative law judge, were essentially undisputed. In May 1976 Maietta, then 23 years old and the holder of a groom's license issued by the New York State Racing and Wagering Board, was indicted in New York State. The offenses with which he was charged, alleged to have occurred in December 1975, were possession of methaqualone and possession thereof with intent to distribute, possession of amphetamine-methamphetamine, and possession of diazepam. Under New York law, according to the indictment, methaqualone is a controlled dangerous substance of the sixth degree and the other two drugs he was charged with possessing are controlled dangerous substances of the seventh degree. Following the indictment, Maietta gave his full cooperation to the authorities and, apparently pursuant to a plea agreement, all charges were dismissed against him except possession of a seventh degree controlled dangerous substance. He was sentenced on January 14, 1977 to a three-year probationary term.
*399 In 1976 an 11-count indictment was returned by the Union County New Jersey grand jury, the first count of which charged Maietta and nine others with conspiracy to distribute controlled dangerous substances. Maietta, unlike other of the codefendants, was not charged with any substantive offense, and his participation in the conspiracy was alleged to consist of the making of telephone calls in aid thereof. There appears to be no question that the same conduct formed the basis of both the New York and the New Jersey indictments against Maietta. He pleaded guilty to the New Jersey conspiracy charge and was sentenced in May 1977 to a suspended jail term of 300 days and one year's probation to run concurrently with the New York probationary term. The judge's written statement of reasons for the imposition of this sentence was, in full, that "defendant's role in this was minor in nature, in view of the overall circumstances."
While the record does not reveal the specific circumstances surrounding Maietta's offenses, it is undisputed that they had nothing to do with horseracing and that the drugs involved have nothing to do with horses. Nor is there any suggestion that Maietta is himself a drug user.
Following the New York conviction Maietta left his groom's employment at the Roosevelt Raceway and obtained a job at a turn-out or rest farm for standard bred horses with the approval of his probation officer. It further appears that his conduct while on probation was exemplary and that he was accorded an early discharge therefrom. In December 1977, just short of a year from the date of his New York conviction, he was successful in obtaining a New York State Certificate of Relief From Disabilities, and in September 1978 the New York State Racing and Wagering Board restored his groom's license, leading to his reemployment in that position at Roosevelt Raceway and, since then, at the Monticello and Yonkers Harness Racetracks as well. In 1980, on his application supported by the endorsements of six active drivers and trainers, he was accorded membership in the *400 United States Trotting Association, which then granted him a trainer's license and a driver's license.
In view of the foregoing factual background and his New York record of successful rehabilitation and work experience following the conviction, Maietta, in December 1979, requested the New Jersey Racing Commission to review informally his qualifications for licensure as a groom. Informal discussions ensued during the course of which both the involved New York and New Jersey probation officials submitted letters to the Commission in support of Maietta's licensing request. Both letters recited the facts of his excellent probation record and concluded that he was fully rehabilitated. The New York probation officer, the Director of Probation of Nassau County, further stated that Maietta's "proposed employment will not be incompatible with the welfare of society," and the New Jersey probation officer, the Chief Probation Officer of Union County, concluded that in his opinion it did not seem that Maietta's "intended employment will be incompatible with the welfare of society." The Commission nevertheless advised Maietta in June 1980 that it was "reluctant" to grant him a New Jersey groom's license because of the drug-related convictions. Maietta then requested a formal proceeding and the matter was referred as a contested case to an administrative law judge for hearing.
At the hearing the Commission did not challenge the applicability of RCOA to its licensing function but argued rather that it had not abused the discretion accorded it by RCOA in denying Maietta a groom's license. The administrative law judge disagreed. After reviewing and evaluating the facts, he concluded as follows:
Based upon the evidence comprising the entire record, I am unable to conclude as did the Racing Commission that simply because Maietta would be in contact with horses on a daily basis that the crimes for which he was convicted inexorably involve an adverse relationship to his proposed employment as a groom. While convictions for drug offenses certainly are of special concern in the racing industry, as well as in many other fields which are closely supervised, it would appear that the Racing Commission in this case did not make any special effort, if at all, to analyze the statutory factors contained in RCOA and *401 their relationship to the particular circumstances of Maietta's case. Rather, what the Racing Commission appears to have done is to deny the license application strictly on the basis of the convictions themselves without consideration of the surrounding circumstances. Since entering his pleas of guilty and his sentencing, Maietta has demonstrated a fine rehabilitation record. The fact that senior probation officials in two states have specifically so stated is significant.
Accordingly, based upon my independent review of the entire record in this matter, and taking fully into consideration the spirit and intent of RCOA, and after having had an opportunity to observe the applicant offering testimony, it is my opinion that the grant of a license to Maietta as a groom would not contravene the public interest. Since the preliminary determination by the Racing Commission did not take into account the several statutory factors contained in RCOA, it cannot be sustained.
I specifically find, that in view of the nature of the crimes for which Maietta was convicted, the circumstances of his involvement, the date of the criminal conduct, the isolated nature of the incident and the clear evidence of his rehabilitation, his license application is appropriate and should have been granted. I further find, from the evidence before me, that Maietta has demonstrated an ability to comply with the norms and requirements of society and that his licensure would not be incompatible with society's welfare nor with the good and welfare of the racing industry in particular.
There should be no doubt that the standards to be applied when applicants with criminal convictions seek licensure from the New Jersey Racing Commission must be quite high. However, I find no indication from the statutes nor from the regulations that they are intended to be insurmountable. Accordingly, based upon the foregoing findings, I CONCLUDE that the Commission's denial of the license application in this case failed to give due consideration to the requirements of RCOA. Accordingly, the Commission's preliminary determination should be set aside and a groom's license issued to Steven A. Maietta.
The Commission rejected the administrative law judge's recommendation. It reasoned that the mere fact of a drug conviction, irrespective of its underlying circumstances or applicant's personal situation, implicated too great a risk to the integrity of the racing industry and to public confidence therein to permit the issuance of a license to any applicant so convicted. Maietta appeals. We reverse.
On appeal the Commission raises for the first time the contention that RCOA does not apply to it. We have elected to consider that issue on appeal not only because it is central to the questions here raised but also because of its public nature and because it involves a purely legal issue of statutory construction requiring no further record for disposition. See, e.g., Yannuzzi *402 v. U.S. Cas. Co., 19 N.J. 201, 211 (1955); Beneficial Finance Co., Atlantic City v. Swaggerty, 170 N.J. Super. 398 (App.Div. 1979), rev'd 86 N.J. 602 (1981); Brown v. Shaw, 174 N.J. Super. 32 (App.Div. 1980).
The Rehabilitated Convicted Offenders Act, N.J.S.A. 2A:168A-1 to 6, inclusive, is based on the express legislative determination that the public interest is served by the rehabilitation of convicted offenders. The consequent legislative declaration is that "notwithstanding the contrary provisions of any law or rule or regulation issued pursuant to law, a person shall not be disqualified or discriminated against by any licensing authority because of any conviction of crime." N.J.S.A. 2A:168A-1. Accordingly, N.J.S.A. 2A:168A-2 provides that
Notwithstanding the contrary provisions of any law or rule or regulation issued pursuant to law, no State, county or municipal department, board, officer or agency, hereinafter referred to as "licensing authority" authorized to pass upon the qualifications of any applicant for a license or certificate of authority or qualification to engage in the practice of a profession or business or for admission to an examination to qualify for such a license or certificate may disqualify or discriminate against an applicant for a license or certificate or an application for admission to a qualifying examination on the grounds that the applicant has been convicted of a crime, or adjudged a disorderly person, except that a licensing authority may disqualify or discriminate against an applicant for a license or certificate if N.J.S. 2A:93-5 is applicable or if a conviction for a crime relates adversely to the occupation, trade, vocation, profession or business for which the license or certificate is sought.
The only exceptions provided for by the statute in terms of disqualifying convictions are convictions to which N.J.S.A. 2A:93-5 is applicable (forfeiture of office on bribery conviction) and convictions which relate adversely to the occupation, trade, profession or business for which the license or certificate is sought. N.J.S.A. 2A:168A-1, 2. And the only licensing agencies expressly exempt from the mandatory applicability of RCOA are law enforcement agencies. N.J.S.A. 2A:168A-6.
Relying on In re Schmidt Disciplinary Proceedings, 79 N.J. 344 (1979), which held that the Division of Alcoholic Beverage Control is an exempt law enforcement agency, the Racing Commission argues that it too is such an agency exempt from *403 RCOA's applicability. We disagree. As the Supreme Court noted in Schmidt, "the Division of Alcoholic Beverage Control is unique among licensing agencies in that it has broad law enforcement powers." 79 N.J. at 354. In support of its conclusion the Supreme Court pointed to the statutory authority of the Director, his deputies, inspectors and investigators to arrest without warrant for violations of the alcoholic beverage control laws committed in their presence. It further noted that all of these persons are statutorily accorded the authority and powers of peace officers to enforce the act, and that the Director, moreover, is empowered to inspect and search all licensed premises without a warrant and to issue subpoenas. The Director and his deputies, inspectors, and investigators are furthermore exempt from the provisions of the Concealed Weapons Act. Thus, the court was satisfied that the Division "is vested with considerable law enforcement powers, and must be considered a law enforcement agency within the meaning of section 6 of RCOA." 79 N.J. at 354-355.
Our review of the Racing Commission's enabling statute, N.J.S.A. 5:5-22 et seq., satisfies us that the Commission has not been accorded the broad law enforcement powers enjoyed by the Division of Alcoholic Beverage Control. Thus, enforcement of the act is not primarily the Commission's responsibility or within its authority but is rather the direct responsibility of the Attorney General and the county prosecutors. It is true, as the Commission points out, that N.J.S.A. 5:5-77 accords it the power to appoint four persons to exercise the powers of municipal police officers to make arrests, execute criminal process and enforce both the criminal laws of the State and the provisions of the act. We do not, however, regard the limited power of the Commission to appoint four police officers to perform routine police functions as sufficient to warrant characterizing the Commission itself as a law enforcement agency. By that reasoning every municipality which employs police officers would also thereby become itself a law enforcement agency exempt from the RCOA. That was clearly not the legislative intention.
*404 We also recognize that the Commission has promulgated regulations suggestive of its law enforcement powers. But regulations adopted by an agency do not by themselves alter the agency's essential character as defined by its own enabling legislation. Nor are the regulations here relied on by the Commission unique to "law enforcement" agencies. They are, rather, typical of administrative agency powers. Thus, N.J.A.C. 13:71-23.18 requires Racing Commission officials and licensees to cooperate with the State police, N.J.A.C. 13:71-5.2 requires track security personnel to file daily reports with the State police, N.J.A.C. 13:71-1.3 requires participants and patrons to abide by Commission rules and N.J.A.C. 13:71-23.17 requires judges who discover that a horse is drugged to notify the State Police and to authorize a search and investigation with the assistance of the State Police. It is thus plain to us that unlike the self-initiating and self-executing law enforcement powers of the personnel of the Division of Alcoholic Beverage, the Racing Commission is, except for its four appointed police officers, required both by statute and regulation to rely on conventional law enforcement services.
While we are persuaded that it was the law enforcement character of the Division of Alcoholic Beverage Control which was the ratio decidendi of Schmidt, there is the further dictum in Schmidt suggesting that since the legislative scheme governing ABC is so singularly detailed, precise and comprehensive, and since the status of the alcoholic beverage industry is so unique, the Legislature might not have intended that RCOA be applicable to the ABC despite the stated breadth of RCOA's scope. 79 N.J. at 354. The Racing Commission argues that it should also be exempt on this reasoning because, it like the ABC, regulates a unique industry pursuant to a comprehensive legislative scheme. We are certainly sensitive to the social implications of horse racing which dictate its strict governmental control in the public interest. See, e.g., State v. Dolce, 178 N.J. Super. 275, 285 (App.Div. 1981); Dare v. State, 159 N.J. Super. 533 (App.Div. 1978); Jersey Downs, Inc. v. Div. of N.J. *405 Racing Comm., 102 N.J. Super. 451 (App.Div. 1968). But we do not regard those considerations as dispositive here. Thus, even if we were to agree that the unique nature of the controlled industry and the nature of the legislative regulatory scheme constituted the basis of an alternative holding of Schmidt, we are not persuaded that these considerations would apply to and similarly exempt the Racing Commission.
It is evident that the raison d'etre of every regulatory administrative agency is the demand of the public interest that a specific aspect of the economic, social or political life of the community be subject to some form of governmental control to protect and advance the public interest. We do not regard the need to control horse racing as any more special or unique or more solicitous of the public interest than, for example, the assurance of the integrity of public elections, the protection of civil rights, the delivery of low-cost, high-quality health services, or the preservation of the environment. All these and many more endeavors are committed to regulation by administrative agencies functioning pursuant to comprehensive enabling statutes. Nor do we regard a groom's license as any more sensitive, insofar as the demands of public interest are involved, than the myriads of other professional and occupational licenses. Thus, to exempt the Racing Commission from RCOA because of the nature of the controlled industry would be inevitably to initiate an erosion and abrogation of RCOA which, in our view, would improperly impinge upon and finally defeat the legislative intention.
Finally, we address the Racing Commission's argument that it properly exercised its discretion in concluding that the convictions here involved related adversely to the license sought. In this regard, N.J.S.A. 2A:168A-2 requires, when that concern is the basis of the license denial, that the agency explain in writing how specific factors therein enumerated relate to the license sought. Those factors include the nature and seriousness of the crime and its attendant circumstances, when it occurred and the age of the person when he committed it, whether the crime was *406 an isolated or repeated interest, social conditions contributing to the crime and evidence of rehabilitation. Although the Commission did not feel compelled to look beyond the mere fact of drug-relatedness, the administrative law judge did consider each of these factors, concluding, and ineluctably so, that none suggested any basis for withholding the license here.
We further note that N.J.S.A. 2A:168A-3 provides that the presentation to the licensing agency of the certificate of the chief parole officer who supervised the applicant's probation stating that the applicant has achieved rehabilitation and stating further that the proposed employment would not be incompatible with the welfare of society has the effect of precluding the denial of the license on the ground of the conviction. Such certifications were here presented. We do not intend to suggest that the license could not be denied on the basis of the underlying conduct, even if not on the basis of the conviction. Nevertheless, considering that conduct here and the certifications presented, it is our view that the withholding of the license under all of the circumstances was arbitrary for the reasons stated herein as well as those stated in the conclusions of the administrative law judge, quoted above, which were overwhelmingly supported by the record. Neither the integrity of horse racing nor the public's confidence therein can be reasonably regarded as subject to compromise if Maietta is accorded the groom's license for which he applied.[1]
*407 The determination of the New Jersey Racing Commission is reversed and the matter remanded to it for issuance of the license applied for.
NOTES
[1] Ordinarily, since the Commission did not expressly address each of the factors relating to the license, which are enumerated in N.J.S.A. 2A:168A-2, we would remand to give it the opportunity to do so. We do not follow that course here because of the thoroughness with which the administrative law judge dealt with those factors. We are persuaded that there can be no reasonable doubt as to the administrative law judge's favorable conclusions respecting them. It is, moreover, implicit in the Commission's conclusions that it did not disagree with the administrative law judge's specific findings but denied the license despite them merely because of the drug-relatedness of the conviction.