**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5071-17T2

NEW JERSEY MOTOR
VEHICLE COMMISSION,

     Petitioner-Respondent,

v.

CHARLES C. HUTCHINSON,

     Respondent-Appellant.

_____

     Argued May 30, 2019 – Decided July 9, 2019

     Before Judges Vernoia and Moynihan.

     On appeal from the New Jersey Motor Vehicle
     Commission, Agency Docket No. 06612.

     Thomas J. Russomano argued the cause for appellant
     (Schiller, Pittenger & Galvin, PC, attorneys; Thomas J.
     Russomano, of counsel and on the brief; Jay B. Bohn,
     on the briefs).

     Vivek N. Mehta, Deputy Attorney General, argued the
     cause for respondent (Gurbir S. Grewal, Attorney
     General, attorney; Melissa H. Raksa, Assistant
     Attorney General, of counsel; Vivek N. Mehta, on the
     brief).

PER CURIAM

Respondent Charles C. Hutchinson appeals from the final administrative decision of the Motor Vehicle Commission (MVC) denying his application for a license to operate a used car dealership because he failed to disclose his 2013 criminal conviction on his license application and his conviction otherwise made him an improper person for licensure under N.J.A.C. 13:21-15.3. The MVC also determined Hutchinson's conviction related adversely to the license he sought, such that the Rehabilitated Convicted Offenders Act (RCOA), N.J.S.A. 2A:168A-1 to -16, did not preclude the denial of his application. We affirm.

I.

Hutchinson, as sole owner and operator of Imports Auto Group, LLC, submitted an application to the MVC for a New Jersey used car dealership license in June 2016. Question Five on the license application asked, "Have the owners, partners, or officers ever been arrested, charged or convicted of a criminal or disorderly persons offense in this or any other state?" The response on the application was "No."

In September 2016, the MVC sent Hutchinson a Notice of Proposed Denial, which stated that the MVC found Hutchinson was "not a proper person" for licensure, N.J.A.C. 13:21-15.5(a)(1), "and/or made willful

2

misrepresentation(s) or omission[s] on" the application, N.J.A.C. 13:21-15.5(a)(2). The Notice detailed that a background check revealed Hutchinson had been convicted in 2013 of "Failure to Make a Lawful Deposit," N.J.S.A. 2C:20-9, was sentenced to five years' probation, and ordered to pay "$80,155.00 in [f]ines." The Notice provided that Hutchinson could request a hearing with the MVC within twenty-five days if he wished to contest the proposed denial.

Hutchinson requested a hearing. The MVC scheduled a pre-hearing conference with MVC compliance officer Ernie DiStefano in October 2016. DiStefano described the pre-hearing conference as "an informal meeting" at which the MVC "just get[s] information from the applicant." At the end of the conference, DiStefano instructed Hutchinson to submit a copy of his bachelor's degree and four character reference letters to the MVC, and Hutchinson waived his right to a hearing before an Administrative Law Judge (ALJ). Hutchinson provided the documents to the MVC in November 2016.

On December 21, 2016, the MVC notified Hutchinson that his license application was denied and provided an Explanation of Denial dated December 20, 2016. The Explanation of Denial stated the MVC "determined that [Hutchinson is] not eligible for a used car dealer's license" because of Hutchinson's 2013 conviction for "Failure to Make [a] Lawful Deposit." The

Explanation of Denial detailed that "[d]uring the pre-hearing conference, [Hutchinson] advised that the charge stemmed from the misappropriation of funds and that [he was] contracted by a company to handle payroll services and it was subsequently found that monies were misallocated." The Notice further stated that "based on the circumstances of the theft," Hutchinson's "prior financial conduct shows the propensity to misuse financial privileges and for these reasons [Hutchinson's] application for a car dealer's license is denied."

The Explanation of Denial letter, however, stated the denial was "not a final order," and that the "matter will be forwarded to the Office of Administrative Law [OAL] for a hearing." DiStefano later testified that the matter was transferred to the OAL because although the MVC did not give much weight to the character reference letters Hutchinson submitted following the pre-hearing conference, the MVC concluded that a hearing was necessary to determine "[w]hether or not the evidence submitted for rehabilitation was enough to allow [Hutchinson] to be licensed based on the crime that he committed."

On September 27, 2017, an ALJ held a hearing on the matter. Hutchinson, DiStefano, and the Manager of the Business Licensing Bureau at the MVC, Hector Maldonado, testified.

4

On March 5, 2018, the ALJ issued an initial decision finding Hutchinson had "started Paymaster Payroll Services in 2001," and his 2013 conviction for "Theft—Illegal Retention"[1] stemmed from his operation of that business. The ALJ further found that Hutchinson's application inaccurately stated that Hutchinson had never been "arrested, charged, or convicted of a criminal or disorderly persons offense."

Hutchinson testified that, at the time the application was completed, he did not believe he had been arrested in 2013 because he turned himself in to the Monmouth County Prosecutor's Office and was not handcuffed by police, and he did not believe he was convicted because he did not have a jury trial. He also testified his landlord filled out his dealership application, and he told his landlord about his criminal history at the time the landlord completed the application. Hutchinson further testified he was surprised to discover his landlord had indicated he did not have a criminal history on his application. When asked why his landlord filled out his application, Hutchinson replied that

---

[1] As noted by the ALJ, the parties refer to Hutchinson's conviction as "'failure to make the required disposition of property received', pursuant to N.J.S.A. 2C:20-9[, but] [t]he Judgment of Conviction referred to this as 'Theft—Illegal Retention.'"

A-5071-17T2

he "had to do several things, [he] had to pay the rent, [he] had to—there was many things [he] was doing at the same time."

The ALJ found Hutchinson not to be a credible witness, noting that:

> [H]e did not respond "Yes" that he had been convicted because there was no trial; he pleaded guilty, which he does not consider a "conviction." [Hutchinson's] testimony was therefore that he had answered "No" to his landlord when asked about arrests and convictions. But later he testified that he in fact gave his landlord the truthful information, and was surprised to later learn that "No" had been written on the application, and therefore his only fault was in failing to review the application before signing it.

The ALJ found Hutchinson's testimony inconsistent and "disconcerting" and did not find credible Hutchinson's testimony that his landlord filled out his application. The ALJ found as a matter of fact that Hutchinson "completed and submitted his application for a New Jersey Used Motor Vehicle Dealer License on his own without any participation of his landlord," and intentionally failed to disclose his conviction on his application.

The ALJ further determined that Hutchinson was not a "proper person" for licensure within the meaning of N.J.A.C. 13:21-15.3(a)(2). The ALJ determined that "N.J.A.C. 13:21-15.3(a)(2) requires a 'proper person' to be of sufficient good character, taking into consideration the applicant's financial responsibility, 'as well as whether or not the applicant has been involved in any

6

illegal activities prior to applying for a license.'" (quoting N.J.A.C. 13:21-15.3(a)(2)). The ALJ accepted Maldonado's testimony that a used car dealer has a "number of financial responsibilities," such as "responsibilities[] with respect to . . . sales contract[s]," responsibilities to "remit monies for sales tax," as well as privileges "with the Department of Banking and Insurance for financing vehicles." Maldonado explained that, given a used car dealer's financial responsibilities, criminal background checks for applicants were "absolutely necessary." Maldonado stated that, in this case, the MVC considered Hutchinson's conviction when determining if Hutchinson was a "proper person" for licensure during its analysis of his "financial responsibility" under N.J.A.C. 13:21-15.3(a)(2). The ALJ similarly determined Hutchinson's conviction stemming from a "misappropriation of funds" demonstrated "evidence . . . [Hutchinson] lack[ed] financial responsibility," and therefore concluded that Hutchinson was not a "proper person" for licensure under N.J.A.C. 13:21-15.3.

The ALJ determined that an analysis under the RCOA was necessary because Hutchinson's application was denied, in part, due to his criminal conviction. The RCOA provides, in pertinent part, that a "licensing authority" such as the MVC may not deny an application for licensure on the basis of the

applicant's criminal conviction unless that conviction "relates adversely" to the occupation or business and the licensing authority "explain[s] in writing" how the conviction relates to "the license or certificate sought" based on specifically enumerated factors. N.J.S.A. 2A:168A-2.

Hutchinson argued that the MVC was required to provide the written explanation as to how his conviction related adversely to his application prior to the hearing before the ALJ, but the ALJ concluded that "[r]egardless of . . . whether the [MVC] went point-by-point through the RCOA in its denial letters, both parties had the opportunity to make RCOA arguments at the [h]earing." In his initial decision, the ALJ analyzed the evidence presented at the hearing in great detail and made findings as to each of the following RCOA factors enumerated in N.J.S.A. 2A:168A-2:

> (a) The nature and duties of the occupation, trade, vocation, profession or business, a license or certificate for which the person is applying;
>
> (b) Nature and seriousness of the crime;
>
> (c) Circumstances under which the crime occurred;
>
> (d) Date of the crime;
>
> (e) Age of the person when the crime was committed;
>
> (f) Whether the crime was an isolated or repeated incident;

(g) Social conditions which may have contributed to the crime;

(h) Any evidence of rehabilitation, including good conduct in prison or in the community, counseling or psychiatric treatment received, acquisition of additional academic or vocational schooling, successful participation in correctional work-release programs, or the recommendation of persons who have or have had the applicant under their supervision.

[N.J.S.A. 2A:168A-2(a) to -2(h).]

The ALJ then determined the MVC "met its burden of proving that the [RCOA] did not preclude the [MVC] from denying [Hutchinson's] license application." The ALJ recommended that the MVC's decision to deny Hutchinson his license be affirmed and filed his decision with the Chief Administrator of the MVC.

Hutchinson filed exceptions to the ALJ's decision. The MVC adopted the ALJ's findings and recommendation by final decision dated May 30, 2018. This appeal followed.

Hutchinson presents the following arguments for our consideration:

POINT I

PURSUANT TO N.J.S.A. 39:10-19, THE ONLY CRIMES THAT ARE RELEVANT TO BEING LICENSED AS A MOTOR VEHICLE DEALER ARE THOSE INVOLVING FRAUD OR

9

MISREPRESENTATION IN THE SALE OF A MOTOR VEHICLE.

POINT II

BECAUSE THE MVC DID NOT UNDERTAKE A PROPER ANALYSIS UNDER THE REHABILITATED CONVICTED OFFENDERS ACT PRIOR TO TRANSMITTING THE MATTER TO THE OAL, ITS DENIAL OF THE LICENSE WAS PER SE INVALID AND MUST BE REVERSED.

POINT III

THE ANALYSIS OF THE FACTORS UNDER THE REHABILITATED CONVICTED OFFENDERS ACT WAS FLAWED.

II.

Our role in reviewing final agency determinations is "limited." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). When reviewing an agency's final determination, the appellate court is limited to considering whether "the agency follow[ed] the law," whether "the record contains substantial evidence to support the findings on which the agency

10

based its action," and whether "the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors." Allstars Auto Grp., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).

"A reviewing court 'must be mindful of, and deferential to, the agency's "expertise and superior knowledge of a particular field."'" Id. at 158 (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009)). A reviewing court also may not "substitute its own judgment for the agency's, even though the court might have reached a different result." Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)). However, an appellate court is not bound by an agency's interpretation of the law, which is reviewed de novo. See Allstars Auto Grp., 234 N.J. at 158.

We first hold that Hutchinson's application was properly denied because he "made a willful misrepresentation or omission" on his license application. N.J.A.C. 13:21-15.5(a)(2). N.J.A.C. 13:21-15.5 allows the MVC to "deny an application for a license" if an applicant engages in enumerated activities. N.J.A.C. 13:21-15.5(a). In pertinent part, the regulation provides that the MVC may deny an application if "the applicant has made a willful misrepresentation or omission in an application for a dealer license." N.J.A.C. 13:21-15.5(a)(2).

Hutchinson submitted his application as the sole owner and operator of Imports Auto Group, LLC.  It included a misrepresentation and omission; the application states that none of the owners had been arrested or convicted of a crime, but Hutchinson had been arrested and convicted of a criminal theft offense.  The ALJ found Hutchinson "completed and submitted his application for a New Jersey Used Motor Vehicle Dealer License on his own without any participation of his landlord," and intentionally failed to disclose his conviction on his application.  The MVC adopted that finding in its final administrative decision.  The ALJ's and MVC's determinations are supported by sufficient credible evidence, Allstars Auto Grp., 234 N.J. at 157, and we therefore affirm the MVC's denial of Hutchinson's application on the basis of his willful misrepresentation on his license application, N.J.A.C. 13:21-15.5(a)(2).

Hutchinson argues the MVC violated the RCOA by failing to provide him with a written explanation as to how his conviction "relate[d] adversely" to the license in the agency's Explanation of Denial.  Although the MVC provided Hutchinson with that analysis in its final decision, Hutchinson argues the MVC violated the RCOA by failing to provide him with an adverse relationship analysis in its Explanation of Denial before the matter was transmitted to the OAL.  We are unpersuaded.

12

The issue before us is one of statutory interpretation. We must determine if the RCOA requires licensing authorities to provide a written explanation as to how a criminal conviction relates adversely to a license sought before a contested case is transmitted to the OAL. Issues of statutory interpretation are questions of law that we review de novo. Kocanowski v. Township of Bridgewater, 237 N.J. 3, 9 (2019). "Our objective in interpreting any statute is to give effect to the Legislature's intent," McClain v. Bd. of Review, 237 N.J. 445, 456 (2019), and "generally, the best indicator of that intent is the statutory language," DiProspero v. Penn, 183 N.J. 477, 492 (2005). "It is not the function of this [c]ourt to 'rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language.'" Ibid. (second alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). Where the statutory language is clear and unambiguous, and susceptible to only one plausible interpretation, "[a] court should not 'resort to extrinsic interpretative aids.'" Ibid. (quoting Lozano v. Frank DeLuca Constr., 178 N.J. 513, 522 (2004)).

The RCOA provides that no licensing authority "may disqualify or discriminate against an applicant for a license . . . on the grounds that the applicant has been convicted of a crime," unless that crime "relates adversely to

the occupation, trade, vocation, profession or business for which the license or certificate is sought." N.J.S.A. 2A:168A-2. "In determining that a conviction for a crime relates adversely to the occupation, trade, vocation, profession or business, the licensing authority shall explain in writing how [the factors listed in N.J.S.A. 2A:168A-2(a) to -2(h)], or any other factors, relate to the license . . . sought." Ibid.

The plain language of the RCOA does not support Hutchinson's claim that the MVC was required to provide him with a written explanation of his conviction's adverse relationship to the license prior to the MVC's final determination. The RCOA merely requires that "[i]n determining that a conviction for a crime relates adversely to" the business for which the license is sought, "the licensing authority shall explain in writing how" the statutory factors "relate to the license or certificate sought." Ibid. The RCOA does not require that the licensing provide its written explanation prior to the final administrative decision denying the license sought. Cf. Maietta v. N.J. Racing Comm'n, 183 N.J. Super. 397, 406 n.1 (App. Div. 1982), aff'd 93 N.J. 1 (1983) (finding that although it was improper for the Racing Commission to have denied a license application on the basis of the applicant's criminal conviction without providing a written explanation pursuant to N.J.S.A. 2A:168A-2, the

14

Appellate Division found a "remand to give it the opportunity to do so" was unnecessary "because of the thoroughness with which the [ALJ] dealt with those factors").

Hutchinson's brief is devoid of any legal authority supporting his contention the MVC was required to provide a written explanation as to the factors under N.J.S.A. 2A:168A-2 prior to the MVC's final determination. His argument appears grounded in a misconception that his matter's "transmittal to the OAL was treated as an appeal, not as an integral part of the initial decision-making process." The procedure employed by the MVC, however, was proper.

N.J.A.C. 13:21-15.14 sets forth the procedure the MVC must follow when it denies an application for a license. "[P]rior to . . . denying a motor vehicle dealer's license . . . the Chief Administrator will send a Notice of Proposed Disciplinary Action to the . . . applicant's business address." N.J.A.C. 13:21-15.14(a). "[T]he . . . applicant may request a hearing concerning the proposed disciplinary action," N.J.A.C. 13:21-15.14(b), which "must list all contested issues of material fact, issues of law, and mitigating circumstances that the applicant . . . intends to demonstrate," N.J.A.C. 13:21-15.14(c). "Prior to scheduling a formal hearing, the Chief Administrator may . . . elect to conduct a pre[-]hearing conference," N.J.A.C. 13:21-15.14(f), and "[i]f there are no

material facts in dispute or specific mitigating circumstances subject to proof . . . the Chief Administrator shall issue a Final Administrative Determination appealable only to the Appellate Division," N.J.A.C. 13:21-15.14(f).

However, if the Chief Administrator "finds that there exist issues of material fact or potentially mitigating circumstances, the matter will be referred for a hearing." N.J.A.C. 13:21-15.14(d). "That hearing may be conducted by the Commission itself or referred to the OAL for consideration by an [ALJ] as a contested case pursuant to N.J.S.A. 52:14B-2 and -9." Allstars Auto Grp., 234 N.J. at 160. A contested case is, in pertinent part, a proceeding, "including any licensing proceeding, in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required . . . by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing." N.J.S.A. 52:14B-2. "Administrative adjudication continues to be the agency's responsibility, although it is still usually effectuated through a bifurcated process in which the hearing and decisional phases are handled separately." Allstars Auto Grp., 234 N.J. at 161 (quoting In re Appeal of Certain Sections of Unif. Admin. Procedure Rules, 90 N.J. 85, 91 (1982)). "[T]he decision whether

to refer the case to an ALJ initially before finally deciding the case remains with the [Chief Administrator]," ibid., and the Chief Administrator retains "the power to make the final decision on the merits," ibid. (quoting In re Carberry, 114 N.J. 574, 584-85 (1989)).

Here, Hutchinson's application for a used car dealership license was processed in accordance with the requisite procedure.  He received the MVC's initial Notice of Proposed Denial, contested that decision, and met with DiStefano for a pre-hearing conference.  Following that conference, the MVC determined "that there exist[ed] issues of . . . potentially mitigating circumstances," N.J.A.C. 13:21-15.14(d), and transferred the case for a hearing before an ALJ, see Allstars Auto Grp., 234 N.J. at 160.  DiStefano testified the matter was transferred for the ALJ to determine "[w]hether or not the evidence submitted for rehabilitation was enough to allow [Hutchinson] to be licensed based on the crime that he committed . . . [because] it wasn't so cut and dry."

The ALJ made his findings of fact and conducted a detailed analysis of how Hutchinson's conviction related adversely to the license he sought under each of the RCOA's statutory factors.  See N.J.S.A. 2A:168A-2(a) to -2(h).  The MVC adopted the ALJ's findings and conclusions, and provided its final administrative decision in writing to Hutchinson.  Ibid.; cf. Maietta, 183 N.J.

Super. at 406 n.1 (declining to remand the matter back to the Racing Commission to conduct the necessary analysis under the RCOA where the ALJ appropriately analyzed the statutory factors). We therefore conclude the MVC properly provided Hutchinson with the required written explanation as to how his conviction related adversely to the license he sought.

Hutchinson further argues the ALJ's analysis of the relevant RCOA factors was flawed. We reject the contention because the ALJ's analysis and conclusions under the RCOA are supported by sufficient, credible evidence in the record. See Allstars Auto Grp., 234 N.J. at 157.

Hutchinson last argues the MVC was not permitted to consider his conviction in determining whether he was a proper person for licensure under N.J.A.C. 13:21-15.3 because the Motor Vehicle Certificate of Ownership Law mandates that the MVC is only able to deny a license on the basis of a conviction involving fraud or misrepresentation in the sale of a motor vehicle. See N.J.S.A. 39:10-19. We find that this argument lacks merit sufficient to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E). We add only that we "accord administrative regulations a presumption of reasonableness," In re N.J.A.C. 7:26B, 128 N.J. 442, 449 (1992), and that N.J.A.C. 13:21-15.3 is not plainly at odds with the broad language of N.J.S.A. 39:10-19, see Shim v.

Rutgers, 191 N.J. 374, 390 (2007). We reject Hutchinson's arguments to the contrary.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION